SHARP v. WHITMORE et al.
SAME v. PETERSON et al.

No. 3028.   Decided November 7, 1917.   (168 Pac. 273.)

1. WATERS AND WATER COURSES—APPROPRIATION OF WATER—DETERMINATION OF RIGHTS—JUDGMENT. A judgment defining and determining conflicting claims, rights, and interests of appropriators of water for irrigation purposes must be definite and certain respecting the relief granted. (Page 19.)

2. WATERS AND WATER COURSES—APPROPRIATION OF WATER—DETERMINATION OF RIGHTS—JUDGMENT. A decree adjudging that defendants were the owners by prior appropriation of sufficient water from a stream to fill their ditch of specified dimensions, without specifying the grade or fall of the ditch or the velocity of the water

flowing therein, or even the amount of land irrigated thereby, was void for uncertainty.[1]  (Page 19.)

3. WATER AND WATER COURSES—RIGHTS OF APPROPRIATORS—WEIGHT OF EVIDENCE.  In a suit to determine water rights in which it appeared that defendant was a prior user of water and had a prior right to sufficient water to irrigate his land, evidence *held* to show that a continuous flow of five cubic feet of water per second could be and for years had been economically applied on defendant's land, and that this amount was necessary to properly irrigate the land, and the court therefore erred in awarding defendant only four cubic feet per second.  (Page 20.)

Appeal from District Court, Seventh District; *Hon. A. H. Christenson,* Judge.

Two actions by Joseph R. Sharp against George C. Whitmore and others and against M. Peterson and others, the actions being consolidated and tried together.

From the judgment the defendant Whitmore appeals.

AFFIRMED in part, and in part Reversed and remanded, in part with directions.

*A. R. Barnes* and *G. A. Iverson* for appellant.

*C. S. Price* and *Wedgwood and Irvine* for respondent.

STATEMENT OF FACTS

Appellant has filed a petition for a rehearing.  The questions presented contain merit, and we are of the opinion that the decision heretofore filed should be modified.  We have, however, decided to make the necessary changes without reopening the case for oral argument.  The case will be ruled and determined by this opinion only.

Joseph R. Sharp, plaintiff, brought an action in the district court of Carbon county, Utah, against George C. Whitmore,

---

[1] *Smith* v. *Phillips,* 6 Utah 376, 23 Pac. 932; *Nephi Irrigation Co.* v. *Jenkins,* 8 Utah 369, 31 Pac. 986; *Nephi Irrigation Co.* v. *Vickers,* 15 Utah 374, 49 Pac. 301; *Elliot* v. *Whitmore,* 8 Utah 254, 30 Pac. 984.

Sunnyside Reservoir Irrigation, Land and Stock Company, a corporation, Charles Albert Pierson, and Joe Peczuh. Plaintiff also brought another action in the same court against M. Peterson, Joe Peczuh, Frank Luzkman, A. D. Van Wagoner, Andrew Larcher, and Richard Roe. These actions, which involve the title to, and the right to the use of, the water of a certain stream situate in Carbon county, Utah, known as the Grassy Trail creek, were consolidated and tried together as one action. Whitmore pleaded and introduced in evidence a judgment in a certain action, wherein he was defendant and one L. A. Scott Elliot was plaintiff, hereinafter referred to as the "Elliot Decree." That decree was rendered and duly entered by the district court of Utah county March 17, 1899. It was stipulated by and between the parties to this action that the stream of water here involved is the same stream that was involved in that case and that lands upon which the stream of water was used prior to and at the time the Elliot decree was entered are the same lands upon which the water has since been and is now being used. It is conceded that Joseph R. Sharp, plaintiff herein, deraigned title to his land, and whatever title or interest he has in and to the water in question, from said Elliott. The Elliot decree, so far as material here, is as follows:

"That the said defendants are the owners by prior appropriation of all the waters of Grassy Trail creek, flowing through and over the premises of the said defendants, particularly described and set out in the findings of fact, except in seasons of high water, and that in seasons of high water they are the owners of sufficient of the waters of said stream to fill their ditch as constructed in 1880; that is to say, a ditch 18 inches wide on the bottom, 2 feet wide on the top, and 18 inches deep, and that said defendants are the owners and entitled, as against the plaintiff, to divert and use the waters of said stream for necessary and beneficial purposes to the extent and amount aforesaid."

The court's findings of fact in the case at bar, so far as material here, are as follows:

"(2) That Grassy Trail creek is a natural stream of water

situate in Carbon county, Utah, and its natural flow affords large quantities of water useful for irrigation, domestic, and culinary purposes.

"(3) That the plaintiff and the defendants are the owners of land bordering upon said Grassy Trail creek and susceptible to irrigation therefrom and said lands in their natural state are desert and barren, but when watered by artificial irrigation produce abundantly; the plaintiff being the owner of 2,000 acres and the defendant George C. Whitmore of 320 acres.

"(4) That on or about the year 1878 the defendant George C. Whitmore, by means of dams and ditches constructed by him, diverted from the flowing waters of the said Grassy Trail creek sufficient therefrom to irrigate substantially 125 acres, and since that time and particularly during the last 15 years has diverted the same for irrigation and other beneficial purposes for use upon and in connection with his said land, and the court finds that the quantity of water, considering the character of Grassy Trail creek, as hereafter found, necessary to irrigate said lands to be four cubic feet per second, and further finds that the said defendant George C. Whitmore is the prior appropriator of said quantity of water from the flowing waters of said Grassy Trail creek.

"(5) That the plaintiff, Joseph R. Sharp, and his predecessors in interest, on or about the year 1885 entered into and upon said Grassy Trail creek, and by means of ditches constructed by them diverted the flowing waters of said Grassy Trail creek for the irrigation of said lands and culinary and domestic use sufficient to irrigate a large acreage of land, and the court finds that by reason of such diversion and use, particularly during the last fifteen years, that the plaintiff has cultivated and irrigated substantially 200 acres thereof, and that considering the character of said Grassy Trail creek as hereinafter set forth, that six cubic feet per second is necessary to irrigate said 200 acres of land, and finds that said plaintiff is the appropriator thereof, through himself and his predecessors in interest, second only from point of time and right to the defendant George C. Whitmore.

"(6) That defendant M. Peterson during recent years constructed a ditch connecting with said Grassy Trail creek, as did also the defendants Joe Peczuh, Frank Luzkman, and Andrew Larcher, and the court finds that said defendants are appropriators of the waters of said Grassy Trail creek by reason of diversion for irrigation and other beneficial purposes of the following amounts, to wit: The defendant M. Peterson of seven-eighths cubic foot of water per second of time; Frank Luzkman five-eighths of a cubic foot of water per second of time; and Andrew Larcher one-fourth of a cubic foot of water per second of time; and that the appropriation of these defendants are equal in point of time and right and subsequent and inferior to the rights of the defendant George C. Whitmore, and of the plaintiff.

"(7) That the evidence is insufficient to show that either or any of the other parties to this action are the owners of the right to the use of any of the flowing water of said Grassy Trail creek.

"(8) That the irrigation season of said lands and as to which the foregoing appropriations were made extends from April 1 to October 15 in each year.

"(9) That Grassy Trail creek is a mountain stream flowing through Sunnyside Canyon and has a short, quick watershed, and varies greatly in its volume of flow, one year with another, and at different times in the same year, and even upon different days. That it is fed by mountain snow and mountain storms and furnishes no constant or uniform volume of flow or supply. That by reason thereof no duty of water extending through the season can be fixed, as the stream becomes entirely dry in the majority of years and the times when water ceases to flow depends each year on conditions as to precipitation and mountain storms, and the court finds that for such reason it is necessary that each of the appropriators as hereto found use such quantity of water in the seasons of greatest flow of said creek as can be beneficially spread upon said lands, and does find that the quantity above mentioned can be beneficially used by each of said parties, and by reason of the fluctuating character of such stream within narrow limits and to avoid

disputes as to the distribution of the flow of said stream the court finds that it is necessary to appoint a commissioner to distribute the waters thereof, to act at such times as the court may direct and he may be requested so to do by any of the parties entitled to the use of water of said creek, under the decree to be entered herein.

"(10) That the decree mentioned and set forth in the fourth paragraph of the answer of the defendant George C. Whitmore is void for uncertainty, and is no defense to the cause of action the plaintiff alleged in his complaint."

Conclusions of law and a decree responsive to and in conformity with the findings of fact were duly entered. George C. Whitmore alone appeals.

McCARTY, J. (after stating the facts as above).

Two questions are presented by this appeal, namely:   (1) Did the trial court err in refusing to accept the Elliot decree as *res adjudicata* to all of the issues in the case at bar in so far as they involve the rights of Whitmore in and to the waters of Grassy Trail creek?   And (2) did the court err in determining the duty of water on the lands described in the pleadings and in adjudging that the amount of water necessary, and to which Whitmore is entitled, under the evidence, to divert from Grassy Trail creek for the irrigation of his land and for culinary and domestic purposes, is four cubic feet per second?

One of the essentials of a valid judgment is that the judgment be definite and certain respecting the relief granted.  In judgments defining and determining   **1, 2** conflicting claims, rights, and interests in and to the use of water in this arid region, the application of the foregoing rule is indispensable.  The rule, the soundness of which is self-evident, is so well established that it would be a work of supererogation to cite authorities illustrating and supporting it.  Does the Elliot decree meet this indispensable requirement?  We are clearly of the opinion that it does not.  Whitmore, by the decree, was awarded sufficient water to fill a ditch "eighteen inches wide on the bottom, two feet wide on

the top, and eighteen inches deep." Neither the grade—fall of the ditch—nor the velocity of the water flowing therein is given. For aught that ·appears in the decree the carrying capacity of his ditch may be less than one cubic foot and it may exceed six cubic feet of water per second. The amount of land irrigated, which is often an important factor in determining the extent of a claimant's right to divert water from a stream or other common source of supply for irrigation purposes, is not given or referred to in the decree.

Looking to the decree the amount of water awarded to Whitmore is a matter of vague conjecture only. The trial court, therefore, did not err in holding that the decree is void for uncertainty, and hence is no defense to plaintiff's cause of action. In Kinney on Irrigation, vol. 3, p. 2815, the author says:

"A decree so indefinite and uncertain that it is impossible to determine the quantity or proportion of water attempted to be awarded is fatally defective."

Discussing the doctrine of *res adjudicata* in cases of this character he says at page 2830:

"But it cannot be regarded as adjudicating rights by implication, unless they were necessarily included in the subject-matter actually decided. So, where the court found that the defendant had acquired a right to divert sufficient water to fill a ditch without specifying the number of feet which might be diverted or the capacity of the ditch, it was held that this was not an adjudication." *Smith* v. *Phillips*, 6 Utah 376, 23 Pac. 932; *Nephi Irrigation Co.* v. *Jenkins*, 8 Utah 369, 31 Pac. 986; *Nephi Irrigation Co.* v. *Vickers*, 15 Utah 374, 49 Pac. 301; *Riverside Water Co.* v. *Sargent*, 112 Cal. 230, 44 Pac. 560; *Lillis* v. *Emigrant Ditch Co.*, 95 Cal. 553, 30 Pac. 1108; *Elliot* v. *Whitmore*, 8 Utah 254, 30 Pac. 984; 1 Wiel, Water Rights, p. 702.

The evidence, without conflict, shows that from the time Whitmore first located on his ranch in the year 1878, until the bringing of this action, he has, during the low-water season of each and every year, continuously diverted and used all of the waters of Grassy Trail creek for irrigating his lands and for culinary purposes, and that the entire stream during the normal flow thereof was necessary for

such uses. In fact, as pointed out in the foregoing statement of the case, the court found that "the stream becomes entirely dry in the majority of years"; and the evidence shows that on such occasions the occupants of the Whitmore ranch were compelled to haul water for their culinary and domestic uses. The important question, therefore, relates to the amount of high and flood waters of the creek heretofore necessarily used by Whitmore on his ranch for the purposes mentioned.

The evidence shows that the irrigated land (125 acres) of the Whitmore ranch extends along and on either side of Grassy Trail creek a distance of about one and one-half miles, and is divided into five fields. The slope or fall of the land is toward the creek channel. About nine acres of the land is covered with an orchard and the balance is devoted to the raising of garden truck, corn, potatoes, and alfalfa. It is conceded that "Grassy Trail creek is a natural stream of water varying widely in the volume of its flow one year to another and at different times during the same season." During what is known as the high-water season, when the stream is augmented by the melting snows and spring rains, there is generally an abundance of water. The high-water season generally begins about the middle of April and ends about the last of May or the first part of June. Occasionally high water continues until about the first of July. The amount of water in the creek during the irrigation season depends largely upon the amount of precipitation of snow the preceding fall and winter within the watershed drained by the canyon through which Grassy Trail creek flows. When the precipitation is heavy the water in the creek the following spring is correspondingly high, and when the precipitation is light there is but little, if any, high water. When the flow of high water ceases in years when the precipitation is normal, the flow of the stream is about one and one-half cubic feet per second. In the latter part of July and during the months of August and September, the stream is generally very low and the entire flow is used by Whitmore to irrigate a garden of a few acres. Sometimes during the months of August and September, in what is known as "dry" seasons, the entire stream

sinks and evaporates before it reaches the Whitmore ranch, and the people living on the ranch are compelled to haul water for culinary and domestic purposes.  The waters of the creek are conveyed to the irrigated lands through two ditches, one of which is referred to in the record as the ''upper,'' and the other as the ''lower,'' ditch.  The intakes of these ditches are about three-fourths of a mile apart.  The evidence, without conflict, shows that the soil of the irrigated portions of the Whitmore ranch is a sandy loam underlaid with sand and gravel and ''is of a character that requires considerable water for proper irrigation.''  The evidence further shows that the waste water and some seepage water from the irrigated lands flows into the creek channel.  Joseph R. Sharp, respondent, testified on this point, in part, as follows:

''More or less of the water that is used upon the Whitmore ranch during the high-water season and during the irrigation season finds its way back into the channel of the stream by drainage and seepage and comes into the channel before it reaches my place.  *  *  *  There is no other place for it to go.  *  *  *  The Big Springs ranch (plaintiff's ranch) is about six miles below the Whitmore ranch.''

Respondent concedes that ''Whitmore is the first user upon the stream,'' and that ''he is entitled to a prior right to the use of sufficient waters thereof to irrigate his lands.''  The important question, therefore, is:  Was Whitmore awarded the amount of water that the evidence shows is necessary to properly irrigate the land (125 acres) he has under cultivation?  The evidence regarding the amount of water heretofore used by Whitmore in cubic feet per second is not as clear and as satisfactory as might be desired.  The only measurements made of the stream, so far as the record discloses, were made in May, 1913, and June, 1914.  These measurements, the correctness of which is not questioned, showed that on May 13, 1913, the flow of the creek was approximately 14.5 cubic feet per second and that the flow gradually decreased, and on May 22 the flow was a little in excess of seven cubic feet per second; that on June 27, 1914, the flow was 9.05 cubic feet per second, and July 1, 1914, it was 7.75 cubic feet per second.

Whitmore, appellant, testified, and his evidence is not disputed, that the carrying capacity of his main or upper ditch is, and has been ever since he turned water into it in 1878, five cubic feet per second; that during the irrigation season of each and every year since he appropriated the water he has, when there was sufficient water in the creek, filled his ditch to its full carrying capacity, and that he has not at any time diverted more than sufficient water to properly irrigate his crops.   P. C. Jones, a witness for Whitmore, testified that he has known the Whitmore ranch since 1901; that since 1905 he has been on the ranch "practically all the time"; that the soil is sandy loam—the subsoil sand and gravel; that (quoting):

"I have had charge of the irrigation of the ranch.   *   *   *   I have been farming all my life   *   *   *   —practical farming.   *   *   *   I know the topography of that country and the declination of the fall of the stream, and from my knowledge of farming and irrigating, in my judgment, taking into consideration the lay of the country, supply of water, and the character of the soil, the irrigation of that land since I have been there has been carried on in an economical way.   In my judgment there has been no waste of water in the irrigation of that land.   We have had seasons when we haven't had enough water to properly irrigate it.   Last season was an unusually wet season, still we were short of water.   In 1913 we never had enough water for a matter of six weeks.   We put it on the garden; it was not used on the alfalfa during July and the forepart of August.   In 1913 I used the entire water on the garden alone for six weeks.   The water along in July and August is always short."

Caleb Tanner, a civil engineer, was called by plaintiff and testified that he was on the Whitmore ranch five or six hours, and observed the character of the soil and the size of the diverting ditches; that in his judgment "each separate ditch would carry as much as five cubic feet per second"; that, because of the loose and porous condition of the soil the "minimum head he would advise using on the hay lands would be five second feet in order to get over the territory."   And again he says:

"My judgment is that a successful—the most successful head of water, under the present lay of the system should be as much as five cubic feet of water a second."

He further stated that he is of the opinion that the 125 acres of tillable land could be properly irrigated with a stream of that size in six days and then the water could be withheld from the land eight days without detriment to the crops. The positive testimony of practical farmers who have irrigated these lands for many years is to the effect that it requires a continuous stream of five cubic feet per second during the high-water season, and all of the creek after the flow of high water ceases to properly irrigate the lands to and including the month of July.

The evidence is conclusive that ever since Whitmore first diverted water from the creek onto his land in 1878, the water was insufficient, with the exception of two or three years, to irrigate any considerable or substantial amount of the land after July. Mr. Tanner testified that he was at the Whitmore ranch in August, 1905, and that "there was no surface flow * * * at the headgate of the Whitmore ranch, and no water was available for the ditch." He further testified that his "statement of the amount of water necessary for the proper irrigation of that land was based upon" the investigation of five or six hours he made of the soil regarding the amount of moisture it contained at the time of trial (April 6, 1915), and that his testimony would be different if he "found different conditions of moisture with reference, at least, to earlier irrigations there. And if it were less moisture than now it would require more water. I only know what the condition is at this particular time." By thus qualifying his testimony regarding his theory that the 125 acres of tillable land in question could be irrigated so as to procure the best results by applying thereon a stream flowing five cubic feet per second for six days, and then turning the water from the land for a period of eight days, it is of but little, if any, aid to a court in determining the amount of water that should be applied on the land under the peculiar and varying conditions respecting the moisture and water supply, not only in differ-

ent years, but in practically each and every irrigation season at the Whitmore ranch.

The trial court evidently, in arriving at its decision that a continuous flow of four cubic feet of water per second during the high-water season is all that can be economically used on the Whitmore ranch, was largely, if not solely, governed by the theories advanced by Tanner regarding the duty of water on that particular tract of land. In fact, it is the only evidence in the record that tends in any sense to support that part of the judgment. We are of the opinion that the greater, the overwhelming, weight of the evidence shows that a continuous flow of five cubic feet of water per second during the irrigation season can be, and has been for many years, economically applied on the Whitmore ranch, and that this amount is necessary to properly irrigate the land during that period. The case is therefore remanded with directions to the trial court to strike out the word "four" and insert the word "five" in its fourth finding of fact, and to make the same change in the first paragraph of the decree thereby adjudging and decreeing Whitmore to be the prior appropriator of, and entitled to divert, five cubic feet per second of the waters of Grassy Trail creek; and to further find and adjudge that he is entitled to divert and use for the purposes mentioned the whole of the normal flow of the creek during the summer, fall, and winter seasons when such flow does not exceed five cubic feet. The judgment in other respects is affirmed, except that each party shall pay his own costs.

CORFMAN and GIDEON, JJ., concur.

THURMAN, J., being disqualified, did not sit in this case.

FRICK, C. J.

I concur. My concurrence is, however, based upon the fact that the evidence is clear and convincing that Mr. Whitmore's land is of such a nature and slopes to such an extent toward Grassy Trail creek that the 125 acres owned by him require a much larger quantity of water to properly irrigate the same

than the usual quantity ordinarily allowed in this jurisdiction. Moreover, I have less hesitancy in arriving at the foregoing conclusion, and in concurring in the modification of the district court's findings and decree, for the reason that the evidence leaves no room for doubt that a large portion of the water that is used on Whitmore's land immediately finds its way back into Grassy Trail creek, and thus becomes available to the plaintiffs whose lands lie below Whitmore's lands. In modifying the findings of fact and the decree, therefore, no injustice can possibly result to the plaintiffs, while if Whitmore were limited to the use of four second feet of water only he might suffer irreparable injury. While in my judgment, ordinarily, this court should be slow to interfere with the findings of fact and decrees of the trial courts in water cases, yet when, as here, injury might result if the findings and decree were permitted to stand and no injury can result by modifying them, as is done in the opinion of Mr. Justice McCARTY, it, in my judgment, becomes the duty of this court to make the modification.