GARRISON, State Engineer, v. DAVIS et al.

No. 5658.   Decided February 13, 1936.   (54 P. [2d] 439.

*Thatcher & Young* and *H. C. Carver,* all of Ogden, for appellants.

*Stephens, Brayton & Lowe,* of Salt Lake City, and *William E. Davis,* of Brigham, for respondents.

ELIAS HANSEN, Chief Justice.

Charlotte E. Hubbard, administratrix of the estate of D. C. Hubbard, deceased, John H. Zundel, administrator of the estate of Abraham Zundel, Abigail Zundel, and John G. Braegger, Jr., prosecute this appeal from a judgment of the district court of Box Elder county, Utah. The judgment appealed from dismissed two petitions, one signed by Charlotte E. Hubbard, and one by the other appellants. By their petitions appellants sought to vacate or amend a decree theretofore entered adjudicating all of the waters of the Mill Dam ditch system located near Willard, Box Elder County, Utah. The court below dismissed the petitions of appellants upon the ground that it was without jurisdiction to consider the same.

To properly understand the question presented on this appeal, it is necessary to give a brief history of the proceedings had in the cause before appellants filed their petitions, together with a summary of the allegations of the petitions here brought in question. On August 30, 1924, Lloyd Garrison, who was then state engineer of the state of Utah, as such state engineer, filed suit in the district court of Box Elder county, Utah, for the purpose of securing a general adjudication of all of the water rights on the Mill Dam ditch and its tributaries. The suit was brought pursuant to the provisions of Laws of Utah 1919, chap. 67, § 21. In that suit R. E. Davis, A. W. Lofthouse, D. C. Hubbard estate, Zundel estate, Hymus Dalton, L. D. Perry, Wm. T. Edwards, J. P. Kunzler, J. H. Mason, Appollas Taylor, and Rachel Morgan estate were named defendants. Soon after the complaint was filed, "notice and summonses" were issued. The parties defendant in the suit acknowledged service of the notices and summonses. M. E. Hubbard, a son of appellant Charlotte E. Hubbard, acknowledged service of summons on the D. C.

Hubbard estate. Thereafter claims were filed in the cause on blanks furnished by the state engineer. One of the claims so filed was by "D. C. Hubbard Est. Mrs. D. C. Hubbard Administratrix, by M. E. Hubbard, Agent." Under date of February 24, 1925, there was filed in the cause an affidavit showing that summons had been published in the "Box Elder Journal, a semiweekly newspaper of general circulation, published in Brigham City, Box Elder County, Utah, * * * in the regular issues of said newspaper * * * commencing Dec. 30, 1924; and ending Jan. 26, 1925." In the summons so published the D. C. Hubbard estate and the Zundel estate were among the parties defendant. Under date of January 5, 1925, upon application of the state engineer, an order was made by the court and filed in the cause making Charlotte E. Hubbard administratrix of the estate of D. C. Hubbard, deceased, a party defendant in lieu of the estate of D. C. Hubbard, and likewise John H. Zundel, as administrator of the estate of Abraham Zundel, was substituted for the Abraham Zundel estate. Under date of April 1, 1925, the state engineer filed in the cause "a proposed determination of water rights" in the Mill Dam ditch system. On the same day, April 1, 1925, there was also filed in the cause an affidavit showing that on the 31st day of March, 1925, copies of the proposed determination were mailed to the various defendants, including the Hubbard estate % Charlotte E. Hubbard, and Zundel, Abraham, estate % John H. Zundel. Upon applications filed in the cause, other persons were made parties defendant. Objections to the proposed determination were filed by some of the defendants. In his proposed determination, the state engineer made, among others, a recommendation "that the court retain jurisdiction of this cause for a period of five years for the purpose of making adjustments in the duty of water, correction of errors and for such other purposes as time may indicate to the court as proper and just." Under date of August 7, 1925, an order was entered by the judge of the trial court in which the suit was pending directing that a hearing of the protest be held

at Brigham City, Box Elder county, Utah, on September 28, 1925, at 10 o'clock a. m., and that notice of such hearing be given to all claimants. The clerk of the court gave notice by sending to each claimant a postal card informing him of the time and place of such hearing. So far as appears, no hearing was had on the date set, but, on the contrary, a stipulation was entered into fixing the rights of the parties signing the same in and to the waters of the Mill Dam ditch system. None of appellants in this proceeding, or their predecessors in interest signed the stipulation, nor did the stipulation purport to fix the rights of the appellants or their predecessors in interest. Under date of March 31, 1927, a decree was entered in the cause fixing the rights of all of the parties mentioned in the suit. Such decree fixed the date of priority of appellants and their predecessors in interest as of the year 1872. Some of the other claimants were given a date of priority as early as 1852; others as late as 1896. The decree so made and entered contained, among others, the following provisions:

"Each of the parties hereinafter set forth in the Schedule of Rights being owners of the rights described is decreed to be entitled to the exclusive use of said waters of the Mill Dam Ditch System according to the dates of their appropriation * * * and the first in point of time in appropriating said water is entitled to the first right to the waters of said stream as herein set forth and so on successively to the last appropriator.

"That whenever or wherever any person's name is used in this decree as a party, the same shall include his heirs, administrators, executors, assigns and grantees of said person.

"That this Court shall retain jurisdiction of the waters of the Mill Dam Ditch System for a period of five years from the date hereof for the purpose of determining the proper duty should the duty hereinafter set forth be found not to be the proper duty, and also for the purpose of making minor corrections which may be found necessary, after which time the decree shall become final and certificates issued by the Clerk of this Court as provided by Sec. 33, Chapter 67, Session Laws of Utah, 1919."

Nothing further was done in the cause touching the matters brought here for review until 1931, when a dispute

arose as to the extent of the water rights of appellants. During that year a contempt proceeding was commenced against one Stephen L. Zundel, who it was claimed had taken more water than was decreed to him or his predecessors in interest. The record does not show what became of the contempt proceedings.

The petitions which form the basis of the present controversy were filed in the cause, one on February 6, 1932, and the other on March 7, 1932. It will thus be observed that the petitions were filed within five years after March 31, 1927, the date of the entry of the decree fixing the water rights of the Mill Dam ditch system.

It is, in substance, alleged in the petitions that appellants' lands are arid in character, and without irrigation are of only nominal value, but with irrigation are of great value and produced abundant crops; that the Mill Dam ditch system is fed by waters which arise in a large swampy spring area in a ravine or depression, which ravine or depression is approximately one mile in length; that appellants' lands are located near the headwater of such system; that as early as 1852 appellants' predecessors in interest located on the land now owned by appellants and in order to secure water with which to irrigate such lands constructed an earthen dam across the ravine or depression in which the swamps or springs are located, and by means of ditches conveyed 1½ cubic feet per second of the waters from the ravine or depression onto their lands and there used the same for irrigation and domestic purposes; that such waters so diverted by appellants have until 1931 been peaceably, openly, notoriously, adversely, exclusively, and under claim of right used by them for beneficial purposes; that appellants' lands are higher in elevation than are the lands of other claimants to the use of the water of the Mill Dam ditch system and as a result most of the water used to irrigate appellants' lands finds its way back into the ravine or depression above the point where the other water users of that system divert their water, and hence is avail-

able for use by the lower users; that the rights of the other claimants to the use of the waters of the Mill Dam ditch system were acquired subsequent to the time that appellants' rights were acquired; during the months of July, August, and September there is not a sufficient quantity of water flowing in the Mill Dam ditch to supply all of the claimants with the full amount of water awarded to them in the decree entered March 31, 1927; in 1931 some of the lower users broke appellants' dam and turned all of their water down the natural channel for their own use and benefit, and appellants were deprived of the use of their water the remainder of the year 1931; that by the terms of the decree of March 31, 1927, the court retained jurisdiction of the cause for the purpose of making corrections; that such decree was entered without a hearing and was based solely upon the recommendation of the state engineer. Mrs. Hubbard further alleged in her petition that she was never served with process, and therefore the court did not acquire jurisdiction of either her person or the water right theretofore owned by D. C. Hubbard. Appellant John G. Braegger, Jr., alleged that he is the successor in interest of the water rights decreed to Hymus Dalton. Appellants prayed that the court issue an order to show cause why the decree of March 31, 1927, should not be set aside or so amended as to award appellants the right to the use of all the water which finds its way into the natural channel above the point where they divert the same.

Upon filing the petitions, orders to show cause were issued as requested. In due time the other parties to the cause were served with such orders. They appeared and demurred to the petitions upon the ground that such petitions did not state facts sufficient to constitute a cause of action. The demurrers were overruled, and answers filed by respondents herein. In their answers they admitted the entry of the decree, denied that the court was without jurisdiction of the person of appellant Mrs. Hubbard, averred that the court was without jurisdiction to entertain the petitions of appel-

lants because they had not furnished such bond as is required by Laws of Utah 1919, chap. 67, § 40. They further alleged that the court was without jurisdiction to amend the decree because no appeal had been taken therefrom and the same had become final. They prayed the petitions be dismissed and that the decree be permitted to stand as entered. Apparently a bond was later filed by appellant Mrs. Hubbard in an attempt to comply with the provisions of Laws of Utah 1919, chap. 67, § 40. The bond, however, is not made a part of the record on appeal, and therefore we are not advised as to its contents. Upon the issues raised by the petitions and the answers thereto, a hearing was had. At the commencement of the hearing, counsel for Mrs. Hubbard moved the court to substitute her in her individual capacity instead of as administratrix of the estate of D. C. Hubbard, deceased. Objection was made to the substitution by the answering defendants. The objection was overruled, the motion for substitution granted, and the court proceeded with the hearing. Evidence was received in support of the claims made by the various parties. Upon the conclusion of the hearing, the court below indicated what the findings would be if it had jurisdiction to hear the petitions. Counsel were requested to file briefs upon the question of whether or not the court had jurisdiction to amend the decree in conformity with the indicated findings. The court finally concluded that it was without such jurisdiction and therefore dismissed the petitions. It is from the judgment of dismissal that this appeal is prosecuted.

One of the principal questions which divide the parties to this controversy relates to the construction which should be given to that provision of the decree whereby the court below retained jurisdiction of the cause for a period of five years from the date thereof for the purpose of determining the proper duty of water in the event the duty fixed by the decree should be found improper "and also for the purpose of making minor corrections which should be found necessary. Appellants contend that the language just quoted

should be given such construction as to entitle them to be heard on their claim that their water rights are superior to the rights of the lower water users. Respondents contend to the contrary. No claim is made that the court below was without power to retain jurisdiction of the cause for such purposes as it saw fit. The controversy is primarily with respect to what effect should be given the words "minor corrections." The word "minor" is defined in Webster's New International Dictionary (2d Ed.) as meaning "inferior in bulk, degree, importance, etc.; less, smaller; as minor division; of minor importance." Independent of statute and independent of the provisions of the decree now under review, the trial court had inherent power "to correct clerical errors at any time, and to make the judgment entry correspond with the judgment rendered." 1 Freeman on Judgments (5th Ed.) p. 281, § 145. It would therefore seem that the court, in retaining jurisdiction for a period of five years for the purpose of making "minor corrections" in the decree, had in mind the retention of jurisdiction for purposes other than and in addition to merely correcting clerical errors and making the decree correspond with the decree actually rendered. Had the court intended to retain jurisdiction merely for the latter purposes, there would have been no occasion to make provision for the retention of jurisdiction for the purpose of making "minor corrections." In a sense, a change in a decree such as appellants here seek is major rather than minor. Yet it appears from the evidence offered at the hearing that in normal years there is sufficient water to supply the lower users with the quantity of water decreed to them without interfering with the water which appellants claim. During the first four irrigation seasons after the decree was entered, appellants were permitted to use the water which they claim without interference or objection on the part of the lower users. It will readily be seen that a provision in a decree fixing the priority of water rights on some streams may be of major importance to the parties thereto while on another stream

it may be of minor importance. If a stream fluctuates greatly in flow during each irrigation season and from season to season, and there is not sufficient water to supply the needs of all, the dates of priorities fixed by a decree would be a matter of major concern to the water users. On the contrary, if the flow of a stream is uniform throughout the irrigation season and from year to year, and there is sufficient or nearly sufficient water to supply the needs of all, the provisions in a decree fixing the priorities of the various users may well be said to be of minor importance. It will thus be observed that it is difficult, if not impossible, to determine with any degree of certainty just what the court below meant when it retained jurisdiction for the purpose of making "minor corrections." That it retained jurisdiction for the purpose of making corrections in the decree is clear, but it is by no means clear as to the extent, if any, that the use of the word "minor" limited the power of the court to make corrections. If resort be had to the whole record, as it may be, for the purpose of removing doubt, we find that the state engineer recommended "that the court retain jurisdiction of this case for a period of five years for the purpose of making adjustments in the duty of water, correction of errors and for such other purposes as time may indicate to the court as proper and just." While it may be that the trial court was not bound to accept such recommendation, still, in the light of the fact that the state engineer collected the information which formed the basis of the decree, the recommendation of the state engineer was entitled to great weight. In this connection it will be noted that Laws of Utah 1919, chap. 67, § 33, directs that: "If no contest on the part of any claimant or claimants shall have been filed, the court shall render a judgment in accordance with such proposed determination," etc.

Apparently the state engineer was in doubt as to the accuracy or thoroughness of the information upon which he made his recommendation, hence his request that the court retain jurisdiction, not only for the purpose of adjusting the

duty of water and making corrections of errors, but also for such other purposes as time may indicate to the court as being just and proper. "It is always proper," says 1 Freeman on Judgments (5th Ed.) p. 133, "to consider what the judgment should have been, since it will be 'presumed that the court intended to adjudge correctly in law upon the facts of the case,' and of two possible interpretations of the language of the judgment, that one will be adopted which makes it correct and valid, in preference to one which would make it erroneous." If a judgment is so uncertain as not to admit of enforcement it will be declared void. *Sharp* v. *Whitmore*, 51 Utah 14, 168 P. 273; *Hardy* v. *Beaver County Irr. Co.*, 65 Utah 28, 234 P. 524. Applying the same or a similar doctrine to the case in hand, it is impossible with any degree of certainty to determine what is, or what is not "a minor correction," and therefore the decree here involved should be given effect as though the word "minor" was expunged therefrom So construing the decree, the petitions were filed within the time that the court retained jurisdiction to hear and determine such matters as are complained of by the appellants. In such view, the appellants were not required to give a bond for costs as a condition precedent to the filing of their petitions. The result sought by the petitions was not a redetermination within the meaning of Laws of Utah 1919, chap. 67, § 40. All that is sought by appellants in the proceedings now under review is that the decree be amended with respect to the priority of their water rights.

It is contended on behalf of respondents that appellant John G. Braegger, Jr., is not entitled to be heard on his petition because he was not a party to the original proceeding. Mr. Braegger claims the right to be heard in this cause because he is a successor in interest of Mr. Dalton, who was a party to the original suit. It will be noted that the decree expressly provides that it shall be binding upon the grantees of the parties to the original suit. Such would be the legal effect of the decree independent of a provision to that effect. It is also clear that one of the

purposes sought to be accomplished by the act under which this suit was brought was that the rights of all water users of a river system or other source of supply should be fixed and determined by one general decree. Having acquired a water right covered by the decree, Mr. Braegger was entitled to a hearing upon his petition the same as would Mr. Dalton had he not conveyed his right.

A somewhat similar contention to that made with respect to the petition of Mr. Braegger is made with respect to the petition of Mrs. Hubbard. Considerable is said in the briefs of counsel as to whether or not the water rights owned by Mrs. Hubbard are affected by the decree. It is urged on her behalf that her rights were not brought in question by naming the D. C. Hubbard estate and then by substituting Mrs. Hubbard as administratrix of that estate as a party defendant. On the contrary, it is urged on behalf of respondent that, as she knew of the pendency of a suit for a general adjudication of the waters of the Mill Dam ditch system, it was her duty to file a claim in that suit; otherwise she must be content with whatever right was awarded to her therein. Apparently the right she claims is the same right as that set up in the decree as belonging to the "Hubbard Estate c/o Charlotte E. Hubbard." We need not prolong this opinion by a discussion of whether or not the court had jurisdiction of Mrs. Hubbard's rights before she filed her petition. By filing her petition she conferred jurisdiction in the court to determine the nature and extent of her rights. Nor are respondents entitled to a reversal of the order of the court below permitting Mrs. Hubbard to be substituted in her individual capacity for her as administratrix of the estate of D. C. Hubbard, deceased. No cross-error is assigned because of such ruling, and therefore it is not before us for review. It should here be noted that appellants John H. Zundel, administrator of the estate of Abraham Zundel, and Abigail Zundel were parties to the original suit.

Respondents make a point of the fact that neither of the Zundels have assigned errors, and therefore, as to them, there is nothing before us for review. This court, as evidenced by the numerous cases cited by respondents, is committed to the doctrine that a party is not entitled ██ to a review of a claimed error in the absence of an assignment. The Zundels, however, are in no worse position by reason of their failure to assign error than they would have been in had they failed to join in the appeal. The law applicable to the effect of a reversal of a judgment on parties not joining in the appeal is thus stated in 2 Freeman on Judgments (5th Ed.) p. 2418:

"Where a judgment is against two or more persons, one only of whom appeals, its reversal, if the judgment was binding upon the defendants jointly, or if all must co-operate in complying with the judgment, affects the parties who did not appeal to the same extent as those who did, as in case of reversal of a judgment against a partnership on the appeal of one of the partners. But if a defendant does not appeal, and is not made a party to the appeal by service on him of notice thereof, an appeal by his codefendant, followed by a reversal of the judgment, cannot authorize the retrial of the cause as against the nonappealing defendant, and the new trial must be confined to the issues between the parties to the appeal. Neither is such a nonappealing defendant entitled to the benefit of the reversal."

In this case all of the appellants are tenants in common of the water diverted from the natural channel into their ditches. They jointly maintain the dam and ditches which divert the water to their lands. The Zundels joined with Braegger in a petition to amend the decree. Upon the issues raised by the petitions and the answers thereto the Zundels are necessary parties. Under such circumstances the Zundels are entitled to avail themselves of a reversal of the judgment dismissing their petition even though they have not assigned error.

The judgment is reversed, and the cause remanded to the district court of Box Elder county, Utah, with directions

to reinstate the petitions and for such further proceedings not inconsistent with the views here expressed as may be deemed proper; costs to appellants.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting).

The opinion of the court arrives at a result to be desired without recourse to the cumbersome procedure implied by section 40, chap. 67, Laws of Utah 1919, but I cannot subscribe to part of the reasoning by which the result is obtained. The question is: Should the appellants be required to resort to said section 40 for a redetermination of their water rights, or may the decree filed on March 31, 1927, be considered as still subject to change for the purpose of determining priorities on February 6 and March 7, 1932, both of which dates were within five years of the entry of the original decree? This depends on whether such decree was on March 31, 1927, final as to priorities or whether it reserved to the court jurisdiction to make amendments as to the dates of priority. The decree reserved the right for a period of five years to make changes in the decree as to the duty of water on the lands of the various water users and to make "minor" corrections which should be found necessary. I assume, without deciding, that the court had the right to retain jurisdiction to make changes in the matters specified. But such right would be coextensive with the power reserved. The district court reserved the right to make "minor" corrections, not major ones. The court's opinion reasons that the word "minor" is indefinite and that it is oft-times difficult to tell what is minor and what is major; that they are comparative terms depending on circumstances. To this I agree. The court then proceeds to strike the word "minor" from the decree, evidently because it is difficult to tell what is minor and what is major, and thus leave the decree as if it retained jurisdiction to make

not only minor but any and all corrections. To this I cannot agree.

Many times in judgments and statutes we have elastic and indefinite words. Within a certain zone of fact situations, it is very difficult to say whether the Legislature or court intended such situations to come under the indefinite word. Thus section 105-8-4, R. S. Utah 1933, states in part, "When a public offense is committed near the boundary of two or more counties the jurisdiction is in any of such counties." It may be difficult, for instance, to know whether an offense committed one mile away is "near" such boundary as meant by the Legislature, but it is not difficult to say that fifty miles is not "near" and that ten feet is "near." By the same token, we may have some changes in the decree of March 31, 1927, which any one can say are "minor" and which any one could say were "major" and some within the zone where opinions as to whether they were major or minor could reasonably differ. But minds could not reasonably differ on the point that a change in date of priority is a major change. The date of priority of a water right goes to the very heart of the right. I think no one could say it was minor especially where a change in the date would affect other rights as in this case. Therefore, the word "minor" must remain in the decree to exclude reconsideration of those matters in regard to which there is no doubt but that they are major; and this matter of rearranging priorities is such a matter.

I do not think we can ignore the word because in some cases it may be difficult to know whether a matter is major or minor. The point in this case is that the matter of priorities is undoubtedly not "minor," and hence as to such matter the decree of March 31, 1927, was final. Being final, it could not be changed. Otherwise I wonder how the other water users could ever know when their rights were finally adjudicated. At least they would not know within five years. And if it becomes final only after five years, was there still an appeal from such decree up to six months after March 31,

1932? The priorities of the appellants were settled as of March 31, 1927.

I therefore dissent from this portion of the opinion.