On September 11, 1939, the late Louis J. Martel executed the following agreement in favor of plaintiff, R.L. Emery, Jr.:
"In consideration of Three Hundred ($300.00) Dollars in cash hereby acknowledged and regard, I have for R.L. Emery, Jr., I hereby give to him one-tenth (1/10) interest in any and all of my oil land leases and mineral oil profits and will make an accounting to him at any time he desires.
"(Signed) L.J. Martel."
"Witness:
"(Signed) Mrs. Lillie Jordan."
After the death of Louis J. Martel, his succession was duly opened and James L. Martel qualified and was appointed administrator of the estate.
On August 2, 1940, plaintiff brought this suit against the Succession of Louis J. Martel, through the administrator, seeking recognition of plaintiff's rights, whatever they might be, under the above-quoted assignment. The petition was met by an exception of vagueness leveled at the failure to allege what "oil land leases" or "mineral oil profits", if any, the succession owned. The exception was sustained, with leave to amend, and in obedience to the lower court's order plaintiff filed a supplemental petition in which he alleged that "at the time of the death of the said Louis J. Martel, he died possessed of oil land leases and mineral oil profits, the nature of which and the description whereof are specifically unknown to petitioner", and thereupon called upon the administrator, or his attorneys, for a full disclosure thereof. *Page 268 
For answer, defendant filed a general denial to all averments contained in plaintiff's original and supplemental petitions.
After hearing the evidence in the case, which, from all indications, appears to be one for an accounting, the district judge rendered judgment in favor of plaintiff in the following words:
"It is ordered, adjudged and decreed that there be judgment herein in favor of Robert L. Emery, Jr., and against the Estate of Louis J. Martel, * * * decreeing that the said Robert L. Emery, Jr., under the written assignment made and executed by the said Louis J. Martel, be the owner of a one-tenth (1/10) interest in any and all oil land leases and mineral oil profits owned and held by the said Louis J. Martel, deceased, and for all costs."
From this judgment defendant has appealed.
From a careful reading of the record, we fail to find evidence of ownership by the succession of any mineral leases, or mineral oil profits. Nor was any attempt made by plaintiff to show that his assignor, Louis J. Martel, deceased, at the time of the assignment in question, was the owner or holder of "oil land leases", or was the recipient of "mineral oil profits". We have searched the record in vain for such disclosures.
There is testimony to the effect that, at the time of the above-quoted assignment, Martel owned an undivided one-fortieth fee interest in a certain tract of land in St. Mary Parish, Louisiana, located in an area then under mineral development. On the date of the assignment, this land was not under mineral lease, as is borne out by the silence of the record, and was minerally unproductive both from the standpoint of mineral lease or oil producing value. After Martel's death, this small fee interest was leased by the succession under proper court authority, jointly with the owners of the remaining interests, to the Pan-American Production Company, from which the succession received a cash bonus of $500. It is shown that the greater portion of this amount has been disbursed by the administrator for succession expenses.
The inventory in the succession lists an oil payment of $150,000 as belonging to the estate, but standing in the name of Frank J. Clancy. This oil payment is shown to be subordinate to certain other oil payments of like amount, and, though this item is appraised in the inventory at $100, we have before us uncontradicted evidence that it is worthless. It should be observed that this oil payment, whatever its value, was owned by the deceased prior to execution of the assignment in favor of plaintiff.
The remaining evidence deals with an assumed interest in land growing out of legal services rendered by the late J. Sully Martel, the father of Louis J. Martel, as attorney for certain claimants under the former's contract of employment. The claimants were successful in recovering the property in question, thereby entitling Louis J. Martel, as an heir of J. Sully Martel, to be recognized as the owner of an undivided interest therein. We are not afforded the benefit of knowing what that interest may be, for on this point, we are again met by a silent record.
The assignment under consideration transfers to plaintiff a one-tenth interest in all of the "oil land leases and mineral profits" owned by the assignor, Louis J. Martel. It is manifest that this was an assignment of rights in praesenti; a fractional allotment of what was then owned by the assignor, together with such "mineral oil profits" as might accrue. The use of the words "all of my oil land leases" clearly discloses that the intent and object of the assignor and his beneficiary was the transfer to the latter of a fixed interest in mineral leases then owned by the former. Had the parties intended to deal with and include in the assignment all mineral leases as might be acquired in the future, appropriate language signifying this purpose could very easily have been employed.
In view of the construction which we place upon the document, we must conclude, from the evidence presented, that plaintiff has failed to show any existing "oil land leases" or "mineral oil profits" owned by the succession falling within the terms and conditions of the assignment.
Certainly, the mineral lease granted by the Succession of Martel to the Pan-American Production Company came into being long after the execution of the assignment. On the execution of the assignment in question, this small fee interest was not under mineral lease. As previously shown, such a lease was granted by the succession some months following the death of *Page 269 
the owner. Manifestly, by assigning an interest in "my oil land leases", this unburdened fee interest fell without and was not to be included with such other "oil land leases" assignor then owned. One may not transfer or assign what he does not own. It may also be significantly observed that this was not a lease owned by the Succession of Martel, but one granted by the succession.
Relative to the two remaining interests upon which testimony was presented, the paucity of which we cannot refrain from commenting upon, the record does not contain that degree and measure of proof which is necessary to sustain recognition of plaintiff's claims.
We are compelled to notice that the judgment rendered below is unenforcible and the owner thereof powerless to execute it. It is simply an expression of judicial sanction in the words of the contract. As above-quoted, the judgment contains no description or specification of the particular mineral leases, rights, or profits which plaintiff shall have and enjoy under and by virtue of his acquisition.
The general rule, that the writ of execution must pursue the judgment, cannot be disputed. There must be, at least, reasonable legal certainty, and the rights of the parties, after a judgment has been pronounced, should not depend upon the discretion or fanciful beliefs of the one in whose favor the decree runs, nor of the law officer charged with the execution thereof.
In a well-known work on Judgments, the author has this to say under the subtitle "Essentials of a Judgment":
"Again, a judgment must be definitive. It must purport to be the actual and absolute sentence of the law, as distinguished from the finding that one of the parties is entitled to a judgment. * * * But, we may say, in general, that if a judgment purports to be final, and is given upon a money demand, the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by referees, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment." Black on Judgments, par. 114, 118.
We also observe that, under the provisions of Act 30 of 1940, all final judgments of district and appellate courts affecting title to immovable property must "particularly describe the property thereby affected", and that Act 205 of 1938 classifies mineral leases as immovable property. Thus, the effect of these statutes constitutes a further obstacle to the relief sought by plaintiff herein.
We conclude that plaintiff has failed to submit the required legal proof for recognition of his demands.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed as in the case of non-suit.
Reversed.