229 P.2d 981

**ROBB v. NIELSON.**

**No. 7735.**

Supreme Court of Idaho.

April 3, 1951.

Robert H. Remaklus, Cascade, for plaintiff.

Robert E. Smylie, Atty. Gen., William H. Bakes, Asst. Atty. Gen., Blaine F. Evans, Asst. Atty. Gen., for defendant.

PORTER, Justice.

Pursuant to paragraph 5 of Section 36-104, I.C., the Fish and Game Commission has acquired certain lands in Valley County for and on behalf of the State of Idaho for the purpose of game farms, which pur-pose is declared by said paragraph 5, to be a public use. Title to and ownership of the lands are in the State of Idaho. The First Extraordinary Session, 1950, of the 30th Session of the Legislature, enacted Chapter 85, reading as follows:

"Section 1. Chapter 1 of Title 36, Idaho Code, is hereby amended by adding a new section thereto, known and designated as Section 36-125 to read as follows:

"36-125. Payment In Lieu Of Taxes.— The County Assessor of each county in which the Fish and Game Department of the State of Idaho owns any lands shall, at the time of certifying the assessment roll to the County Auditor as provided by Chapter 3, Title 63, Idaho Code, certify the number of acres of land in said county belonging to the Fish and Game Depart-ment of the State of Idaho and the valua-tion thereof at the time said real property was dropped from the assessment roll. The County Auditor shall thereafter determine in the manner of computing the tax as provided by Chapter 10, Title 63, Idaho Code, what would have been the tax upon said lands based upon the current levy made by the County Commissioners were the lands not the property of the State of Idaho. The County Auditor shall there-upon prepare a state voucher on behalf of said county describing therein the lands belonging to the Fish and Game Depart-ment of the State of Idaho in said county and his computation of the sum determined by him which shall be considered the sum

to be made as a payment in lieu of taxes. Such County Auditor shall forward said voucher to the Director of the Fish and Game Department who shall approve the same and on or before the 20th day of December of each year, cause a warrant to be drawn on the Fish and Game Fund by the State Auditor in the sum appearing on the voucher, which warrant shall be forwarded to the County Treasurer of the county so submitting the voucher. The County Treasurer shall deposit the money so received in the County Treasury in the same manner that moneys derived from tax collections are deposited to be apportioned in the same manner as tax receipts; provided, however, that no voucher shall include and no payment shall be made to any county for lands owned by the department for game bird farms or fish hatchery purposes.

"Section 2. This act shall be in full force and effect on and after the first day of July 1950."

In pursuance of said Chapter 85, the plaintiff, as County Auditor of Valley County, caused a state voucher to be drawn, showing the amount of $604.52 to be paid by the State of Idaho in lieu of taxes upon such lands acquired by the Fish and Game Department in Valley County. Such voucher was approved by the director of said department and by the State Board of Examiners, and was presented to defendant, as Auditor of the State of Idaho, for payment. Defendant refused to draw a warrant on the Fish and Game Fund for the payment of such voucher as required by the terms of said Chapter 85. Whereupon plaintiff filed an application in this court for writ of mandate requiring defendant to issue such warrant. Upon such application this court issued an alternative writ of mandate requiring defendant to issue the warrant or show cause why he should not do so. Defendant filed answer to the application for writ of mandate, challenging the constitutionality of said Chapter 85. The matter has been heretofore presented in open court and is now before this court for decision.

Defendant contends that while said Chapter 85 designates the payments to be made thereunder as "payment in lieu of taxes", such Chapter, in effect, provides for the levy and payment of taxes upon state lands contrary to the provisions of Article VII, Section 4, of the Constitution of Idaho. Such Section 4 reads as follows: "Public property exempt from taxation.—The property of the United States, except when taxation thereof is authorized by the United States, the state, counties, town, cities, villages, school districts, and other municipal corporations and public libraries shall be exempt from taxation."

An examination of said Chapter 85 discloses that the sums to be paid thereunder in lieu of taxes upon state lands, are computed and arrived at in precisely the same manner as taxes on other lands,

save and except that the valuation of the state lands is fixed as their assessed value at the time they were dropped from the assessment roll rather than at an annual assessed valuation. With this single exception, the amounts to be paid would be just the same if the counties had been authorized to levy upon and tax the state lands as other lands. Chapter 85 appears to be an effort to provide by indirection for taxation by the counties of state lands. It seeks to accomplish the same result as taxation. The fact that the base for computation of the sums to be paid is fixed at the assessed value of the lands at the time they were dropped from the assessment roll, does not divest the proceedings of their character as a tax.

In 11 Am.Jur. 724, par. 95, it is said: "The duty of the courts to declare void any statute which violates the Constitution is not limited to direct violations but extends to any evasion or indirection which may be practiced by the legislature. What cannot be done directly because of constitutional restriction cannot be accomplished indirectly by legislation which accomplishes the same result."

In support of this principle, see also State v. Armstrong, 17 Utah 166, 53 P. 981, 41 L.R.A. 407; Stanley v. Jeffries, 86 Mont. 114, 284 P. 134, 70 A.L.R. 166; State v. Salt Lake County, 96 Utah 464, 85 P.2d 851; San Bernardino County v. Way, 18 Cal.2d 647, 117 P.2d 354; 51 Am.Jur. 107.

Plaintiff, while denying that said Chapter 85 indirectly provides for taxation, takes the position that if it does so provide, it is not unconstitutional by reason thereof. Plaintiff contends that the exemption of public property from taxation as provided by Article VII, Section 4, of the Constitution, does not prohibit the legislature from voluntarily paying taxes on public property. The legislature apparently deemed that it was prohibited from directly authorizing the taxation of state lands by the counties. It did not attempt, in terms, to authorize the taxation of the lands nor to waive the state's immunity from taxation. It did not expressly provide for the voluntary payment of taxes on public property. It provided for payments to be made "in lieu of taxes." Plaintiff cites, in support of his contention, the four Idaho cases of State ex rel. Hoover v. County of Minidoka, 50 Idaho 419, 298 P. 366; Kieldsen v. Barrett, 50 Idaho 466, 297 P. 405; Independent School Dist. v. Pfost, 51 Idaho 240, 4 P.2d 893, 84 A.L.R. 820; and Reynard v. City of Caldwell, 53 Idaho 62, 21 P.2d 527, 90 A.L.R. 1124.

State ex rel. Hoover v. County of Minidoka, supra, was an action to quiet title to certain lands acquired by the state in foreclosing a school fund mortgage as against the lien of taxes levied prior to the purchase of the land by the state. This court held that the constitutional provision exempting public property from

taxation applied to delinquent taxes arising prior to purchase as well as to current taxes or charges, and quieted the state's title. The court reaffirmed State ex rel. Nash v. Reed, 47 Idaho 131, 272 P. 1008, in holding that there is no distinction with respect to exemptions from taxation of state property acquired through the foreclosure of a mortgage, and that which may be said to be owned and held for purely governmental purposes.

Kieldsen v. Barrett, supra, was an action testing the constitutionality of Chapter 9, Title 57, I.C., setting up a farm mortgage fund authorized, among other things, to pay delinquent taxes on lands upon which mortgages are held by the State of Idaho. The taxes considered were those levied while the state was a mortgage holder and prior to the arising of the state's immunity from taxation upon receipt of sheriff's deed. The court held the act constitutional.

Independent School Dist. v. Pfost, supra, was an action to restrain the collection of a gasoline tax. After pointing out that the exemption provided for by Article VII, Section 4, of the Constitution only applies to a property tax and does not apply to an excise tax, the court refused the injunction.

Reynard v. City of Caldwell, supra, was an action to compel the city to pay special assessments levied against city property for local improvements. The opinion points out that there is a well-recognized distinction between an assessment for special improvements and the levy of a property tax such as is prohibited by Article VII, Section 4, of the State Constitution. The decision apparently holds that the legislature could provide for the payment by the municipality of special assessments, but that special assessments cannot be levied against the property of a city for local improvements in absence of positive statutory authorization.

It thus appears that there is nothing in any of the foregoing cases which supports plaintiff's contention that the legislature can waive the constitutional exemption from taxation of public property and voluntarily pay taxes thereon.

The often cited Utah case of State v. Armstrong, supra, presented a situation parallel in principle to the instant case. The constitution of Utah provides that "All property in the State, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." Const.1895, art. 13, § 2. The legislature attempted to authorize counties to remit or abate certain taxes after their levy. The Utah court held that the legislature could not exempt from taxation property not exempt by the constitution; that the ultimate result, whether by exemption or abatement, was precisely the same; that in either case the property was relieved from the burden of taxation; and that the attempt of the legislature to do

indirectly that which it could not do directly rendered its enactment void.

The proceedings and debate attendant upon the adoption of Article VII, Section 4, in the Constitutional Convention of 1889, reported in Vol. 2, page 1652, Section 4, throw light upon the meaning of such section. A Mr. Vineyard sought to strike out Section 4, and the proceedings continued as follows:

"Mr. Ainslie. I think if you strike that section out it would be something unusual. I don't know any state in the Union where the property of the United States, state and towns and other municipal corporations, are placed in a category with other property, and allowed to be taxed by the legislature, and leave it to say whether it shall be or shall not be taxed. I think the constitution of every state provides for the exemption of the property of the United States and towns and cities and counties. It is an organic prohibition upon the legislature to tax anything of that kind. Without that provision the legislature could tax state property, and I am willing to support the amendment of my colleague from Boise to strike out "private libraries," and I have prepared a substitute for the section; but his amendment covers the same thing."
* * *

"The Chair: The question now recurs upon the motion to strike out Section 4.

"Put to vote and lost.

"The Chair. The question now recurs upon the amendment of the gentleman from Boise, to strike out the words 'and private' in the second line of the fourth section.

"Put to vote and carried.

"Mr. Mayhew. I now move the adoption of the section as amended. (Carried.)"

■ It thus appears that the constitutional convention understood the section to be an organic prohibition against the legislature providing for or paying a tax upon public property.

■ Under our constitutional provisions, the legislature cannot, either directly or indirectly, tax or authorize the taxation of public property, or provide for the same result, and cannot waive the exemption provided for in the constitution and voluntarily pay taxes on public property.

■ We are constrained to hold that said Chapter 85 indirectly provides for taxation of state lands by authorizing payments which accomplish the same result as taxation, and that it is void because of conflict with Article VII, Section 4 of the constitution.

The foregoing disposes of plaintiff's contention that the payments in question are unconditional grants and that the constitutionality of said Chapter 85 should be determined from such point of view. It is, also, unnecessary to consider the other contentions of defendant attacking the enactment.

The alternative writ of mandate heretofore issued will be quashed and the application for writ of mandate denied.

GIVENS, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.