265 P.2d 328

### STATE

### v.

### VILLAGE OF GARDEN CITY et al.

**Nos. 8045–8046.**

Supreme Court of Idaho.

Dec. 23, 1953.

Dale Clemons & James W. Blaine, Boise, for Ballantyne et al.

Garrity & Garrity, Nampa, for Village of Garden City.

Harry S. Kessler, Karl Jeppesen and Frank E. Chalfant, Boise, for respondent.

J. F. Martin and C. Ben Martin, Boise and Robert N. Elder, Coeur d'Alene, amici curiæ.

KEETON, Justice.

Claiming that numerous defendants, appellants here, were publicly maintaining and operating places in Garden City where gambling was permitted and games of chance were played for money, credits, checks or other representations of value, and places where coin-operated amusement devices known as slot machines, punchboards, chance spindles and chance prize games were played by the general public, plaintiffs (respondents here) brought this action to have such activities enjoined and abated, and for other relief. The complaint claimed that such operations and businesses so engaged in by defendants are illegal and injurious to the public morals, and the same constitute a public moral nuisance.

It is alleged that defendant Garden City is a partner in such business of maintaining and carrying on such gambling places, in that Garden City has licensed the same under an agreement with the other defendants (appellants here) to share in the profits.

Specifically the complaint alleges that Title 50, Ch. 15, I.C., Ch. 151, 1947 S.L. which purports to legalize slot machines, and Title 63, Ch. 29, I.C., Ch. 239, 1947 S.L., which purports to legalize and license the operation of punchboards, chance spindles and chance prize games are unconstitution-

al and void. It is claimed that such devices by whatever name they may be called are lotteries, prohibited by Art. 3, § 20 of the State Constitution, which reads:

"The legislature shall not authorize any lottery or gift enterprise under any pretense or for any purpose whatever."

In response to a show cause order appellants filed general and special demurrers; claimed that the complaint does not state facts sufficient to constitute a cause of action; that plaintiffs (respondents) have no legal capacity to prosecute the action, and that the constitutionality of the statute above referred to cannot be attacked in the manner done. Motions to strike parts of the complaint were also made. The demurrers were overruled and the motions denied. Appellants declined to plead further and the court deemed the material allegations of the complaint confessed and entered judgment in which the continuing of the nuisances complained of was enjoined and abated. Other parts of the decree entered will be hereinafter referred to.

The court concluded that slot machines and other gambling devices known as punchboards, chance spindles and chance prize games so operated by appellants are lotteries and held that Title 50, Ch. 15, I.C., Ch. 151, 1947 S.L., and Title 63, Ch. 29, I.C., Ch. 239, 1947 S.L., are unconstitutional as attempts on the part of the Legislature to legalize lotteries and that the operation of such devices in the manner com-

plained of constitute a moral nuisance in violation of Section 52–106, I.C.

From the decree entered the Village of Garden City appealed, case No. 8046. Separate appeals were filed by other defendants, case No. 8045. The appeals have been consolidated for hearing and decision.

The appeal presents for determination and decision the constitutionality of the above mentioned statutes, certain procedural questions hereinafter discussed, the right of respondents to maintain the action, and the imposition on the defendants other than Garden City of certain penalties inflicted.

■ The primary and controlling question presented is whether or not the statutes under which the gambling devices complained of and operated by appellants in conjunction with an agreement or ordinance of Garden City, are in violation of Art. 3, § 20, of the Constitution.

A lottery is defined by Section 18–4901, I.C., as follows:

"A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enter-

prise, or by whatever name the same may be known."

This definition in substance conforms to that of the common law which has defined a lottery as a species of gaming, wherein prizes are distributed by chance among persons paying a consideration for the chance to win; a game of hazard in which sums are paid for the chance to obtain a larger value in money or articles.

All lotteries are gambling. To constitute a lottery, as distinguished from other methods or forms of gambling, it is generally held there are three essential elements, namely, chance, consideration and prize. When these three elements are present, the scheme is a lottery. 54 C.J.S., Lotteries, § 2(a), p. 845; 34 Am.Jur. 647, Sec. 3.

For a definition of the schemes and devices here complained of, we have only to read the code provisions attempting to legalize the same. Section 50–1502, I.C., following a preamble enumerating the purposes for which the act was passed, Section 50–1501, I.C., defines a coin-operated amusement device, in other words, a slot machine, as:

" * * * a machine or device into which may be inserted any piece of money or other object and from which as a result of such insertion and the application of physical or mechanical force may issue wholly upon any chance or uncertain or contingent event, any piece or pieces of money, or any check, memorandum, or other

tangible evidence calling for money or property, or which check, memorandum, or other tangible evidence is, after issuance, actually redeemed in money or exchanged for money or property by any person whatsoever; which device is defined as and hereby declared to be gaming but not lottery. * * *"

Section 63–2901, I.C., defines a punchboard, chance spindle and chance prize game as:

"(b) A 'punchboard,' within the meaning of this act, shall be a board containing a number of holes or receptacles of uniform size in which are placed slips of paper or other substance, in a capsule or otherwise, upon which is written or printed token numbers, figures, insignia, characters, symbols, letters or words, or combinations thereof, which may be punched or drawn from said hole or receptacle by any person upon payment of a consideration, and who shall obtain an award of merchandise or money only upon the chance of drawing the token number, figure, insignia, character, symbol, letter or word, or combination thereof, which has previously been designated to pay a prize.

"(c) The term 'chance spindle,' within the meaning of this act, shall be any spindle, stick, pin, or other device on which may be fastened by any method,

slips of paper, envelopes, cards, or other devices, upon which is written or printed token numbers, figures, insignia, characters, symbols, letters or words, or combinations thereof, and which may be drawn by any person from said spindle, or holder, upon payment of a consideration, who may obtain an award of merchandise or money, only upon the chance of drawing the token number, figure, insignia, character, symbol, letter or word or combination thereof, which has previously been designated to pay a prize.

"(d) A 'chance prize game,' within the meaning of this act, shall be any game in which the obtaining of a prize is based solely upon the chance of the player, upon payment of a consideration, to draw or otherwise secure a token number, figure, insignia, character, symbol, letter or word, or combination thereof, which is designated to pay a prize, in cash or merchandise."

and Section 18–3801, I.C., as amended 1953 S.L., Ch. 62, Page 82, provides:

" * * * Such devices so licensed are hereby declared to be games of chance but not a lottery."

The definitions above quoted and contained in the acts by which the Legislature attempted to legalize slot machines, designated as coin-operated amusement devices, punchboards, chance spindles and chance prize games, when analyzed, simply

522

define lotteries by other names. and the parts of the acts which define the various devices as gaming and not lotteries, are of no importance. While the acts herein asserted by appellants to be constitutional are adroitly and cleverly drawn, the fact remains that the instrumentalities and devices so defined and permitted are no more nor less than lotteries. The Legislature cannot amend or repeal the constitution, or any part of it, by legislative act, nor interpret it. Under prescribed procedure the constitution may be amended by the electors of the State, not otherwise. Art. 20, § 1 of the Constitution. The interpretation of the constitution is a matter for the courts to determine; and designating the devices complained of by other names than lotteries does not change the essential characteristics of the contrivances attempted to be legalized by stating that they are gambling devices and not lotteries. A lottery is a well recognized evil and mischief regardless of the name it may be called, or the manner in which it operates. The fact that the name of a gambling device may be changed or new forms of games invented, probably never seen nor heard of by the framers of the constitution, does not change the law. All such similar contrivances and devices, by whatever name they may be called, or however operated, in a vast majority of cases submitted to the courts of last resort have been held to be lotteries, and where the constitution of a particular state pro-

hibits lotteries, such pretended licensing of similar devices and schemes has been declared unconstitutional. Thus in State ex rel. Evans v. Brotherhood of Friends, 41 Wash.2d 133, 247 P.2d 787, 788, a statute legalizing the operation of slot machines under prescribed conditions was attacked as unconstitutional and in violation of a provision in the Washington Constitution, Art. 2, § 24, which provides: "The legislature shall never authorize any lottery * * *", the Supreme Court of Washington held that slot machines are mechanical lotteries and said:

"The statutory provision, exempting non-profit, benevolent, educational, fraternal, athletic or social clubs from provisions of statute penalizing possession, use or operation of slot machines as felony, is unconstitutional as authorizing lottery."

Other decisions and authorities holding that slot machines are mechanical lotteries are: Loiseau v. State, 114 Ala. 34, 22 So. 138; Johnson v. State, 137 Ala. 101, 34 So. 1018; Thompson v. Ledbetter, 74 Ga.App. 427, 39 S.E.2d 720; Meyer v. State, 112 Ga. 20, 37 S.E. 96, 51 L.R.A. 496; State v. Lowe, 178 N.C. 770, 101 S.E. 385; State v. Vasquez, 49 Fla. 126, 38 So. 830; State ex rel. Replogle v. Joyland Club, 124 Mont. 122, 220 P.2d 988; State v. Israel, 124 Mont. 152, 220 P.2d 1003; State ex rel. Brown v. Buffalo Rapids Club, 124 Mont. 172, 220 P.2d 1014; State v. Marck, 124

Mont. 178, 220 P.2d 1017; State v. Read, 124 Mont. 184, 220 P.2d 1020; State ex rel. Olsen v. Crown Cigar Store, 124 Mont. 310, 220 P.2d 1029; State v. Coats, 158 Or. 122, 74 P.2d 1102; State v. Coats, 158 Or. 102, 74 P.2d 1120; 54 C.J.S., Lotteries, § 8, p. 853. See Annotation in 101 A.L.R. page 1126.

What has been said relative to slot machines or mechanical amusement devices, so called, in the act attempting to legalize the same, applies equally to punchboards, chance spindles and chance prize games. These latter contrivances, schemes, and devices, by whatever name they may be called or known, or however operated, have been held to be lotteries in numerous decisions in courts of last resort. State ex rel. Harrison v. Deniff, Mont., 245 P.2d 140; State v. Hudson, 128 W.Va. 655, 37 S.E.2d 553; 163 A.L.R. 1265, Annotations page 1279; State ex rel. Olsen v. Crown Cigar Store, 124 Mont. 310, 220 P.2d 1029; 34 Am.Jur. 650, Sec. 7; 54 C.J.S., Lotteries, § 10, Sub. b, p. 856; In re Gray, 23 Ariz. 461, 204 P. 1029; Stanger v. State, 107 Tex.Cr.R. 574, 298 S.W. 906; Helen Ardelle, Inc. v. Federal Trade Comm., 9 Cir., 101 F.2d 718.

It therefore follows that slot machines, mechanical amusement devices, punchboards, chance spindles, chance prize games, as defined in the acts attempting to legalize them, and all other similar contrivances, devices and schemes are lotteries, and any legislative act authorizing, or attempting to authorize their operation in any manner, is unconstitutional, being prohibited by Art. 3, § 20, of the Idaho Constitution.

We therefore conclude that the acts of the Legislature above referred to, attempting to legalize their operation, are unconstitutional and void.

Appellants contend that there was no proof submitted of the allegations of the complaint, and judgment by default should not have been entered.

By declining to answer, the material allegations of the complaint were by appellants confessed as true, and no proof of the nature of the devices complained of was required, as the statute attempting to legalize them defines what they are. See definitions above quoted.

Appellants further assert that the contrivances complained of were not nuisances because they were authorized by the State and the State is a participant in the scheme. No valid statute authorizing the devices complained of existed or now exists.

It is claimed that the State accepted a license fee to operate the devices in question, hence the right to operate them cannot be challenged in the manner done. The fact that a license fee was accepted, if it was, is no defense. Payment of taxes on, or license for a gambling machine or device furnishes no justification for its operation in violation of the constitution or

the anti-gambling laws. Pepple v. Headrick, 64 Idaho 132, 128 P.2d 757.

An unconstitutional act is not a law. Hence the statutes here attacked, being unconstitutional, the appellants cannot successfully contend that the nuisance complained of was carried on under authority of the State, or that such devices were operated under authority of the provisions of an ordinance of Garden City. State v. Frederic, 28 Idaho 709, 155 P. 977.

All the people of the State are bound by constitutional limitations and Art. 3, § 20 of the Constitution is, with the other provisions, the supreme law of the land. Robb v. Nielson, 71 Idaho 222, 229 P.2d 981; Day v. Day, 12 Idaho 556, 86 P. 531; State v. Malcom, 39 Idaho 185, 226 P. 1083; 11 Am.Jur. 724, Sec. 95; 11 Am.Jur. 602, Sec. 2. Hence there is no valid statute or ordinance authorizing the businesses in which the appellants were engaged, and here complained of.

Appellants further contend the action cannot be maintained by citizens and residents of the county in the name of the State. The maintaining of the action in the manner done is specifically authorized by Section 52-402, I.C., which provides:

"The county attorney *or any resident citizen of the county* may maintain an action of an equitable nature, as relator, in the name of the state of Idaho, to abate a moral nuisance, perpetually to enjoin all persons from maintaining the same, and to enjoin the use of any structure or thing adjudged to be a moral nuisance." (Emphasis supplied.)

See also Section 52-204, I.C.

We conclude the respondents are proper parties plaintiff and they can maintain the action as relators in the name of the State, and challenge the constitutionality of the legislative acts here complained of.

That the operating of the devices and businesses of the appellants complained of constituted a moral public nuisance, there can be no doubt. Section 52-106, I.C., reads:

"Any building, place, or the ground itself, wherein or whereon gambling or any game of chance for money, checks, credit or other representatives of value is carried on or takes place, or gambling paraphernalia is kept, or any notice, sign or device advertising or indicating the existence or presence of such gambling or any game of chance is displayed or exposed to view, is declared a moral nuisance and shall be enjoined and abated as provided by law."

A public nuisance is defined by Section 52-102 I.C. as:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or dam-

age inflicted upon individuals may be unequal."

Appellants contend that the policy-making body of the State is the Legislature and not the courts. The public policy of the State relative to the licensing or operation of lotteries was fixed by the framers of the Constitution. The constitutional inhibition, Art. 3, § 20 of the Constitution, cannot be modified or changed by the Legislature. The public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced. It is the duty of officials who act under a valid legislative enactment to abide by its terms. It is the court's duty to interpret the meaning of legislative enactments without regard to possible results. State ex rel. Capital Inv. Co. v. Lukens, 48 Idaho 357, 283 P. 527; Saccamonno v. Great Northern R. Co., 30 Idaho 513, 166 P. 267. The determination and announcing of the public policy of the State by the Legislature, within its sphere, does not empower the Legislature to pass unconstitutional acts.

It is contended by appellants that when Art. 3, § 20 of the Constitution was adopted the provisions as originally submitted to the convention read as follows:

"The legislature shall not authorize any *game of chance,* lottery or gift enterprise under any pretense or for any purpose whatever." (Emphasis supplied)

The words italicized "game of chance" were deleted and as so changed the provision was then adopted. It is urged that what the framers of the Constitution had in mind, and what they visualized in the debates as lotteries, were such schemes as the Louisiana lottery, and other similar enterprises known at the time. It is therefore contended that the word "lottery" as used in the constitution did not encompass the devices and schemes under consideration.

The debate in the constitutional convention does not indicate that the convention, in deleting the words, "game of chance", intended to eliminate from the prohibition expressed in the section as finally adopted, slot machines or any of the devices herein determined to be lotteries. Mr. Ainslie, who made the motion to strike the words, "game of chance", sought to continue the authority to license certain "banking games" then licensed under territorial law. Mr. Mayhew, in supporting Ainslie, referred to the "game of chance" as "a game of skill." At least his statement is susceptible of that construction. Vol. 2, Idaho Constitutional Convention, Proceedings and Debates, 1248–1249.

Debates in the constitutional convention may be resorted to, for purposes of interpretation, where the language of a provision is ambiguous or uncertain; but where it is clear and plain, the only way

we can determine what the members of the constitutional convention had in mind and meant is by what they said in the provision adopted. In the instant case there is no ambiguity. The provision under consideration is plain, positive and mandatory. The framers prohibited lotteries then known or that the ingenuity of man might thereafter invent, by whatever names they might be called, or in what manner they might operate. The provision under discussion specifically prohibits any lottery for any purpose then known or thereafter invented or discovered. The lotteries sought to be prohibited include, among other things, the evils here complained of.

▆▆ This provision of the Constitution, Art. 3, § 20, is negative and prohibitory, is self-acting and needs no legislation to carry it into effect, and it cannot be annulled in the manner attempted. State v. Malcom, 39 Idaho 185, 226 P. 1083; Toncray v. Budge, 14 Idaho 621, 95 P. 26; Katz v. Herrick, 12 Idaho 1, 86 P. 873; Cunningham v. Moody, 3 Idaho 125, 28 P. 395.

▆▆ In the judgment appealed from the trial court penalized the appellants by ordering the places of business where the nuisances complained of were carried on, closed for a year from the date of the decree, and enjoined the use of such buildings and places for any purpose for said length of time, and ordered the sheriff to close the same; and further ordered the sheriff to remove from the places of business of appellants other than Garden City:

"All fixtures or movable property used in conducting, aiding, or abetting such nuisance; to sell the same in the manner provided by law for the sale of chattels under execution; and to close such building or place against its use for any purpose and to keep it closed for a period of one year unless sooner released by order of the court."

These provisions of the decree are attacked by appellants on numerous grounds.

Appellants assumed to act under authority of what they, the Legislature, and some executive officers and others believed to be a valid law. They carried on the businesses in good faith and contributed to the State and Garden City for the privilege.

While it has often been stated in general terms that an unconstitutional statute confers no rights, creates no liability, and affords no protection, there are many well recognized exceptions to this general rule. An unconstitutional law should not be applied to work a hardship or impose a liability on one who has acted in good faith and relied on the validity of a statute before the courts have declared it invalid. Allen v. Holbrook, 103 Utah 319, 135 P.2d 242. An unconstitutional act has been held to protect citizens dealing with public officers under its provision up to the time it is declared unconstitutional. Provident Land Corp. v. Provident Irrig. Dist., Cal.

App., 94 P.2d 83; Shafford v. Brown, 49 Wash. 307, 95 P. 270; Gordon v. Conner, 183 Okl. 82, 80 P.2d 322, 118 A.L.R. 783.

There are other reasons why these penalties imposed cannot be sustained. The order is indefinite and uncertain as to just what the lien is supposed to cover, what movable property is to be seized and sold, or its location, and the general nature of the decree leaves it to the discretion of the sheriff as to what he is to seize and sell. This would place the sheriff in a position of exercising judicial discretion, · which cannot be upheld. Garrison v. Davis, 88 Utah 358, 54 P.2d 439; Emery v. Succession of Martel, La.App., 10 So.2d 267; 31 Am.Jur. 412, Sec. 25. No sufficient determination is made in the decree appealed from as to just what real estate is supposed to be liened or affected. Hand v. Twin Falls County, 40 Idaho 638, 236 P. 536; 49 C.J.S., Judgments, § 72, p. 191; Garrison v. Davis, 88 Utah 358, 54 P.2d 439; 31 Am. Jur. 411, Sec. 24; Emery v. Succession of Martel, La.App., 10 So.2d 267. .

Nor can the gambling devices complained of be sold at public auction. There is no property right in the gambling devices herein described. They can be used for no purpose except to violate the law.

This proposition was ably discussed by Justice Ailshie in Mullen & Co. v. Moseley, 13 Idaho 457, 90 P. 986, 12 L.R.A.,N.S., 394. We concur in the reasoning· of that authority, and the conclusion reached. See also Thamart v. Moline, Sheriff, 66 Idaho 110, 156 P.2d 187.

The operation of the devices here complained of has, in the presentation of the case, on the one hand been crowned with a tiara of respectability and clothed with a robe of royal excellence. Conversely, such instrumentalities and devices have been condemned as a moral pestilence, enriching the few and pauperizing the many, with no redeeming features or justification. The devices complained of have been called bandits and other names. We decline to enter into a discussion of the moral issue so presented and have limited our discussion to the legal principles involved.

We conclude that the decree of the district court, should be affirmed except as to the seizure and sale of the personal property; and except that part which places a lien on the real estate; and except that part which closes the places in which the gambling devices were operated and maintained, for a year. These penalty provisions of the decree above excepted are ordered stricken. The decree as so modified is affirmed. Costs to respondents.

PORTER, C. J., and GIVENS, TAYLOR and THOMAS, JJ., concur.