**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51877**

| | |
|---|---|
| TOMMY T. TUCKER, | ) |
| | ) **Opinion Filed: March 30, 2026** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| STATE OF IDAHO | ) |
| | ) |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Rick Carnaroli, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Tommy T. Tucker appeals from the district court's judgment summarily dismissing his petition for post-conviction relief, arguing the district court erred by using an incorrect standard in declining to appoint counsel and in summarily dismissing his petition. We hold the district court did not err in declining to appoint counsel to Tucker or in summarily dismissing his petition for post-conviction relief.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In the underlying criminal proceeding, pursuant to a plea agreement, Tucker pleaded guilty to burglary and possession of methamphetamine and admitted he had violated terms of his probation in three unrelated cases. In exchange for his guilty plea, the State agreed to dismiss (or not refile) the remaining charges, dismiss the persistent violator and deadly weapon sentencing enhancements, and "recommend that any time served in the instant case will run concurrent with

1

time to be imposed" on the probation violations. There was no agreement as to a sentencing recommendation and the parties both agreed the plea agreement was not binding on the trial court. Tucker signed the guilty plea advisory form, indicating he read and understood the terms of the plea agreement. At the change of plea hearing, the trial court explained it was not bound by the terms of the plea agreement and the court could impose a harsher sentence than recommended by either party and asked Tucker if he understood; Tucker indicated he understood.

At sentencing, the trial court imposed a unified sentence of ten years with four years determinate on the burglary charge and a concurrent unified sentence of five years with four years determinate on the possession charge. However, the court ordered both sentences to run consecutively to the executed sentences in the probation violation cases. Tucker filed an Idaho Criminal Rule 35 motion, which the court denied. Tucker appealed, and this Court affirmed the judgments of conviction and sentences, and the order denying Tucker's I.C.R. 35 motion. *State v. Tucker*, Docket No. 49476, (Ct. App. April 5, 2023) (unpublished).

Tucker then filed a petition for post-conviction relief. Therein, he asserted three claims, two of which Tucker does not raise on appeal. As to the third claim, Tucker asserted: "I would like to withdraw guilty on ground that the prosecution did not uphold the part of Rule 11 plea agreement which was recommend everything run concurrent." (Errors in original.) Tucker also filed a motion for the appointment of counsel. The State filed an answer and asserted: (1) Tucker failed to state any grounds upon which relief could be granted; (2) Tucker's claims should have been raised on direct appeal, and thus, were procedurally defaulted pursuant to Idaho Code § 19-4901(b); and (3) Tucker's claims were time barred, as they were waived in the trial court pursuant to I.C. § 19-4908.

The district court issued a "memorandum decision denying petitioner's motion for appointment of counsel and summarily dismissing petition for post-conviction relief."[1] Therein, the district court denied Tucker's request for counsel and indicated it would summarily dismiss Tucker's petition "on the Court[']s own motion." As pled in the petition, the district court read Tucker's claim as a claim that the State breached the plea agreement. In its memorandum decision, the district court reasoned that although the State had not explicitly asked for the sentences to run

---

[1] Although entitled "memorandum decision denying petitioner's motion for appointment of counsel and summarily dismissing petition for post-conviction relief," the memorandum decision was actually a notice of intent to dismiss Tucker's petition pursuant to Idaho Code § 19-4906.

concurrently during the sentencing hearing, the trial court considered the State's argument to be for concurrent sentences. The district court noted the trial court had rejected the State's argument for concurrent sentences, which it was allowed to do as it was not bound by the plea agreement. The district court found Tucker failed to present any evidence that he was entitled to relief on the claim, the claim was only supported by conclusory allegations, and the claim was disproven by the record in the underlying criminal proceeding. The district court then stated: "Petitioner shall be given notice that his Petition for Post-Conviction shall be dismissed. Petitioner shall have an opportunity to respond to these grounds for dismissal."

In response, Tucker filed a motion for the district court to take judicial notice of the underlying criminal proceeding. Tucker also filed an affidavit. Therein, Tucker raised a new claim: that the trial court did not follow the plea agreement. The district court entered a memorandum decision dismissing Tucker's petition for post-conviction relief. The district court considered the new claim and rejected it because the trial court was not bound by the plea agreement, and the issue was addressed on direct appeal and Tucker could not relitigate an issue already presented to, and resolved by, the Court of Appeals. Tucker appeals.

## II.

## STANDARD OF REVIEW

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

3

## III.

## ANALYSIS

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Tucker argues the district court erred in denying his motion for appointment of counsel using the summary dismissal standard and absent a determination of whether Tucker established the possibility of a valid claim or that the claim was frivolous. Tucker also argues the district court erred in dismissing his petition because he established a genuine issue of material fact. The State argues the district court did not err because Tucker's claim was not preserved, but even if preserved, the district court properly denied Tucker's request for counsel and dismissed the petition because Tucker's claim was frivolous.

### A.    Appointment of Counsel

Tucker argues the standard for determining whether counsel should be appointed is relatively low and requires only that a petitioner allege facts to establish the possibility of a valid claim and "[o]nly if all of the claims alleged in the petition are frivolous may the court deny a request for counsel." The district court summarily dismissed Tucker's entire petition but Tucker only challenges one claim on appeal, thereby conceding that the other claims did not establish a genuine issue of material fact and consequently, did not warrant the appointment of counsel. Thus,

4

for purposes of this appeal, we need only determine whether the district court erred in declining to appoint counsel on the remaining claim.  If, as to that one claim, Tucker failed to allege the possibility of a valid claim, then there was no error in failing to appoint counsel.

The appointment of counsel in an Idaho Uniform Post-Conviction Procedure Act (UPCPA) proceeding is governed by I.C. § 19-4904, which provides:

> If the applicant is unable to pay court costs and expenses of representation, including stenographic, printing, witness fees and expenses, and legal services, these costs and expenses, and a court-appointed attorney may be made available to the applicant in the preparation of the application, in the trial court, and on appeal, and paid, on order of the district court, by the county in which the application is filed.

The Idaho Supreme Court has made clear that the use of the word "may" in I.C. § 19-4904 means that the appointment of counsel in a UPCPA proceeding is discretionary. *Murphy v. State*, 156 Idaho 389, 392-93, 327 P.3d 365, 368-69 (2014).  However, the word "may" is not truly discretionary in this context.  In the circumstance where the petitioner alleges facts that support the possibility of a valid claim, the trial court is not just *permitted* to appoint counsel; it is *required* to do so.  *Id*. at 393, 327 P.3d at 369 ("Although the petitioner is not entitled to have counsel appointed in order to search the record for possible nonfrivolous claims, counsel should be appointed if the facts alleged raise the possibility of a valid claim."  (Internal quotation marks omitted.)).  "Should" is the past tense of "shall" and is used above in an "auxiliary function to express obligation."  *Should*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/should (last accessed Feb. 20, 2026).  Furthermore, the Idaho Supreme Court has repeatedly construed the word "shall" as being mandatory and not discretionary.  *State v. Peregrina*, 151 Idaho 538, 540, 261 P.3d 815, 817 (2011); *State v. Tribe*, 123 Idaho 721, 723, 852 P.2d 87, 89 (1993).

If a petitioner has alleged facts that support the possibility of a valid claim, both the Idaho Supreme Court and the Idaho Court of Appeals have read "may" as "shall" in I.C. § 19-4904.  In doing so, the Courts have created a mandatory standard for the appointment of post-conviction counsel that is:  not authorized by the plain language of I.C. § 19-4904; not required by either the Idaho or United States Constitutions; unsupported by caselaw; or justified under public policy.  This judicially created standard improperly adds language to I.C. § 19-4904 that does not exist, in violation of *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011), discussed *infra*.  Additionally, the precedential underpinnings of the standard rely on the

5

2000 version of I.C. §§ 19-852 and 19-853,[2] but the Idaho State Legislature amended I.C. § 19-853 shortly after *Brown v. State*, 135 Idaho 676, 23 P.3d 138 (2001), discussed *infra*, was issued to make clear that I.C. § 19-4904, not I.C. §§ 19-852 or 19-853, governed the appointment of counsel in post-conviction proceedings. Moreover, a review of the historical justification for Idaho's adoption of the UPCPA indicates Idaho adopted the Act to support finality of state court judgments, not to broaden the scope of protection awarded to criminal defendants collaterally challenging their convictions. Consequently, there is no constitutional (either federal or state), statutory, precedential, or policy basis for a standard that mandates the appointment of counsel in a post-conviction proceeding in any circumstance, including where the petitioner has alleged the possibility of a valid claim.

### 1. Constitutional basis

From a constitutional perspective, the right to counsel in a post-conviction proceeding does not rest on the potential merits of the claim because regardless of the validity of the claim, both the United States Supreme Court and the Idaho Supreme Court have made clear there is no constitutional right to counsel under the United States Constitution, *see Pennsylvania v. Finley*, 481 U.S. 551 (1987), or the Idaho Constitution, *see Aeschliman v. State*, 132 Idaho 397, 973 P.2d 749 (Ct. App. 1999).

In *Finley*, the United States Supreme Court held neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment to the United States Constitution created a right to appointed counsel in post-conviction proceedings, explaining:

> Post[-]conviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.

*Finley*, 481 U.S. at 556-57 (internal citations omitted). The Court reiterated that there is no Sixth Amendment right to appointed counsel in a civil, collateral challenge to a criminal conviction: "We have never held that prisoners have a constitutional right to counsel when mounting collateral

---

[2] Idaho Code §§ 19-852 and 19-853 were recodified in 2023 as I.C. §§ 19-6009 and 19-6010 by the State Public Defender Act, ch. 220, secs. 5, 6, §§ 19-6009, -6010, 2023 Idaho Sess. Laws 660, 669-671. The recodification does not affect the analysis and for ease of reference, the statutes will be referred to as I.C. §§ 19-852 and 19-853.

attacks upon their convictions and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Id*. at 555 (internal citations omitted). Thus, under the federal constitution, there is no right to court-appointed counsel under the Sixth or Fourteenth Amendments in post-conviction proceedings. Idaho has adopted this holding. In *Aeschliman*, this Court reasoned:

> The Idaho Supreme Court has set forth no distinction between the right to counsel under the Idaho Constitution and that afforded by the United States Constitution. Therefore, we conclude that the right to counsel under the Idaho Constitution grants no greater protection in post-conviction applications than that afforded by the United States Constitution.

*Aeschliman*, 132 Idaho at 404, 973 P.2d at 756 (internal citations omitted). Consequently, there is no constitutional basis for the judicially created standard for the mandatory appointment of counsel in post-conviction proceedings regardless of whether the petitioner has alleged the possibility of a valid claim.

### 2. Statutory basis

The Idaho Supreme Court has explicitly rejected the argument that I.C. § 19-4904 gives rise to a statutory right to counsel. *See Murphy*, 156 Idaho at 395, 327 P.3d at 371 (reiterating that I.C. § 19-4904 does not create a statutory right to post-conviction counsel). Given both the Supreme Court's and this Court's repeated holding that there is no statutory right to post-conviction counsel, this Court can find no basis on which to conclude I.C. § 19-4904 requires a trial court to appoint counsel if a petitioner alleges facts that raise the possibility of a valid claim.

Statutory interpretation begins with the statute's plain language. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings. *Id.* When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction. *Id.* at 361-62, 313 P.3d at 17-18.

Idaho adopted the UPCPA in 1967. When initially enacted, I.C. § 19-4904 provided that a court-appointed attorney "shall" be made available to an applicant for post-conviction relief who was unable to pay the costs of representation. Uniform Post-Conviction Procedure Act, ch. 25, § 4, 1967 Idaho Sess. Laws 42, 44. This language was based on the language in the 1966 Revised Uniform Post-Conviction Procedure Act promulgated by the National Conference of Commissioners on Uniform State Laws. Nat'l Conf. of Comm'rs on Unif. State Laws, *Revised*

7

*Uniform Post-Conviction Procedure Act*, *Prefatory Note: Reason for Proposed Uniform Act*, 1966 HANDBOOK OF THE NAT'L CONF. OF COMM'RS ON UNIF. STATE LAWS AND PROCS. OF THE SEVENTY-FIFTH ANN. CONF., 266, 274. The only reason the Commission included the word "shall" was because the United States Supreme Court had not yet addressed whether counsel was required in a collateral proceeding and so the Commission assumed there would be a right to counsel based on *Gideon v. Wainwright*, 372 U.S. 335 (1963) and *Douglas v. California*, 372 U.S. 353 (1963). Nat'l Conf. of Comm'rs on Unif. State Laws, *supra*, at 274.

Following the decision in *Pennsylvania*, the United States Supreme Court made clear there is no right to counsel in collateral proceedings and in 1993, the Idaho State Legislature amended I.C. § 19-4904 to change "shall" to "may." Inability to Pay Costs, ch. 265, sec. 2, § 19-4904, 1993 Idaho Sess. Laws 898, 898. The Statement of Purpose for the amendment reads, in part, as follows: "This proposed legislation will also give the trial court judge discretion with respect to costs and court-appointed counsel for such hearings." S.B. 1116, 52nd Leg., 1st Reg. Sess. (Idaho 1993) (Statement of Purpose RS 02298). As amended, the plain language of I.C. § 19-4904 leaves the appointment of counsel completely within the trial court's discretion. Nothing in the statute limits that discretion, regardless of the potential merit of any claim. Under the plain language of the statute, the district court could deny appointment of counsel even if there is a non-frivolous claim. This standard is further emphasized by the 2001 amendment to I.C. § 19-853, which again made clear that the appointment of counsel in a post-conviction proceeding is governed by I.C. § 19-4904 and is discretionary with the trial court. *See* H.B. 183, 56th Leg., 1st Reg. Sess. (Idaho 2001) (Statement of Purpose RS10833).

In the 2001 amendment to I.C. § 19-853(2)(b), the Idaho State Legislature clarified that appointment of counsel at public expense in post-conviction proceedings shall be governed only by I.C. § 19-4904. It did so by adding language to I.C. § 19-853(2)(b) that reads: "Provided, the appointment of an attorney at public expense in uniform post-conviction procedure act proceedings shall be in accordance with section 19-4904, Idaho Code." Duty to Notify of Right to Counsel, ch. 160, sec. 1, § 19-853(2)(b), 2001 Idaho Sess. Laws 568, 569.

The Statement of Purpose for the 2001 amendment to I.C. § 19-853(2)(b) reads:

> This bill amends section 19-853, Idaho Code, relating to the duty to advise an accused of the right to counsel at public expense, to clarify that the right to court appointed counsel in uniform post-conviction relief cases is discretionary with the court.

8

Section 19-853, Idaho Code, describes the duty of judicial and law enforcement officers to inform persons of their right to counsel. Currently, language in section 19-853(b) which refers to "any post-conviction proceeding" may give the erroneous impression that a defendant has an absolute right to publicly funded counsel in a Uniform Post-Conviction Procedure Act proceeding, a separate civil remedy to test the legality of the conviction unrelated to the criminal proceeding.

However, under section 19-4904 of the Uniform Post-Conviction Procedure Act, the authorization of expenses of representation and court appointed counsel are discretionary with the court.

This bill adds language to 19-853(b) to express that the Uniform Post-Conviction Procedure Act controls in regard to the appointment of publicly funded counsel.

H.B. 183.

The Idaho House Judiciary, Rules and Administration Committee Minutes from February 7, 2001, explain the reason for the proposed change and indicate that the amendment

comes from the Judiciary and it is really a housekeeping bill. The legislation clarifies that the right to court appointed counsel in uniform post-conviction relief cases is discretionary with the court. It also adds language to express that the Uniform Post-Conviction Procedure Act controls in regard to the appointment of publicly funded counsel.

*Appointment of attorney in uniform postconviction procedure act: Hearing on RS 10833 Before the H. Judiciary, Rules and Admin. Comm.*, 56th Leg., 1st Reg. Sess. (Idaho 2001) (statement of Rep. David Bieter, Comm. Member, H. Judiciary, Rules and Admin. Comm.).

The impetus for amending the statute was the issue presented in *Brown*. The oral argument in *Brown* was held February 2, 2001, but just five days later, a bill prompted by the Idaho Supreme Court had been drafted and introduced to clearly define the discretion given to the trial court to appoint counsel in post-conviction proceedings. The legislature could have incorporated some of the language from I.C. § 19-852 (which articulated a standard for appointment of counsel in post-conviction cases) into the 2001 amendment to I.C. § 19-853(2)(b) but declined to do so.

By virtue of the amendment, the Idaho State Legislature again expressly rejected the idea that the appointment of post-conviction counsel was mandatory in post-conviction proceedings regardless of the possibility of a valid claim. Thus, the Idaho State Legislature has made it clear on two occasions--in 1993 and in 2001--that the appointment of counsel is discretionary regardless of whether a claim has potential merit. In light of this clear legislative directive, we cannot construe I.C. § 19-4904 to require the appointment of counsel if the petitioner has established the

possibility of a valid claim and to deny the appointment of counsel "only if all of the claims alleged in the petition are frivolous."

Pursuant to *Verska*, 151 Idaho at 896, 265 P.3d at 509, no court has the authority to modify an unambiguous statute on the ground that it is palpably absurd or would produce absurd results when construed as written. "The public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced." *Id*. (quoting *State v. Village of Garden City*, 74 Idaho 513, 525, 265 P.2d 328, 334 (1953). The Idaho State Legislature has made clear that the appointment of counsel in post-conviction proceedings is discretionary in all circumstances and regardless of the potential merit of a claim contained within the petition. To the extent this Court has read language into I.C. § 19-4904 that makes appointment of post-conviction counsel mandatory where there is a possibility of a valid claim, such holdings can no longer be reaffirmed following *Verska*. Because the plain language of I.C. § 19-4904 makes the appointment of counsel discretionary, the presence of facts in a petition which allege the possibility of a valid claim does not change what is otherwise a discretionary decision into a mandatory directive.

Based on the plain language of I.C. § 19-4901, we find no basis upon which to mandate the appointment of counsel when the petitioner alleges facts that create the possibility of a valid claim. To the extent any of this Court's prior holdings so indicate, we now disavow those holdings.

### 3. Precedential basis

Tucker cites *Workman v. State*, 144 Idaho 518, 164 P.3d 798 (2007) as reiterating the standard for the appointment of post-conviction counsel. In *Workman*, and as reaffirmed in *Swader v. State*, 143 Idaho 651, 152 P.3d 12 (2007), the Idaho Supreme Court reiterated that the standard governing the appointment of counsel in a post-conviction proceeding depends on whether "the petition alleges facts showing the possibility of a valid claim that would require further investigation on the defendant's behalf." *Workman*, 144 Idaho at 529, 164 P.3d at 809. There are several problems with this standard. First, as discussed above, the Idaho State Legislature has, if not explicitly, then implicitly, rejected the "possibility of a valid claim" standard as part of the statutory language governing the appointment of counsel in post-conviction proceedings pursuant to I.C. § 19-4904. Second, *Workman* relies extensively on *Charboneau v. Sate*, 140 Idaho 789, 102 P.3d 1108 (2004), which in turn relies extensively on the language in *Brown*. As discussed below, *Brown* involved the statutory interpretation of language in I.C. § 19-

10

852--language which, as of 2001, no longer applied to the appointment of counsel in post-conviction proceedings. Additionally, both *Charboneau* and *Brown* predate *Verska*, so to the extent *Charboneau* and *Brown* rely on a construction of I.C. § 19-4904 that is incompatible with the opinion in *Verska*, they are no longer a correct statement of the law.

The language in *Workman* on which Tucker relies is set forth in I.C. § 19-852 and was first addressed in the post-conviction context in *Brown*. There, Brown filed a petition for post-conviction relief and a motion for the appointment of counsel. *Brown*, 135 Idaho at 677, 23 P.3d at 139. Following some proceedings at which Brown was absent and unrepresented, the district court denied Brown's motion for appointment of counsel and granted the State's motion to summarily dismiss Brown's petition. *Id*. Brown renewed his motion for the appointment of counsel. *Id*. The motion was again denied. *Id*. Brown appealed.

The Idaho Supreme Court noted that Brown's request for the appointment of counsel was governed by both I.C. §§ 19-4904 and 19-852. *Brown*, 135 Idaho at 678, 23 P.3d at 140. At the time, I.C. § 19-852(b) provided:

> A needy person who is entitled to be represented by an attorney under subsection (a) is entitled:
>
> . . . .
>
> (3) to be represented in any other post-conviction or post-commitment proceeding that the attorney or the needy person considers appropriate, unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense and is therefore a frivolous proceeding.

The Court first looked to the relevant language from I.C. § 19-4904 ("a court-appointed attorney *may* be made available") and reiterated: "There is no constitutional right to an attorney in state post-conviction proceedings." *Brown*, 135 Idaho at 678, 23 P.3d at 140 (emphasis added).

However, the Court's review of I.C. § 19-852 resulted in a different conclusion. The Court looked to the language in the statute and concluded that it required the appointment of counsel unless the trial court determined that a post-conviction proceeding was frivolous. The Court noted that I.C. § 19-852(b)(3) articulated the standard for determining whether a post-conviction proceeding was frivolous: "It is frivolous if it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense." *Brown*, 135 Idaho at 679, 23 P.3d at 141. The Court then explained what a trial court should do when determining whether a post-conviction proceeding was frivolous:

11

When applying [the frivolous] standard to *pro se* applications for appointment of counsel, the trial court should keep in mind that petitions and affidavits filed by a *pro se* petitioner will often be conclusory and incomplete. Although facts sufficient to state a claim may not be alleged because they do not exist, they also may not be alleged because the *pro se* petitioner simply does not know what are the essential elements of a claim.

*Id*. The Court went on:

It is essential that the petitioner be given adequate notice of the claimed defects so he has an opportunity to respond and to give the trial court an adequate basis for deciding the need for counsel based upon the merits of the claims. If the court decides that the claims in the petition are frivolous, the court should provide sufficient information regarding the basis for its ruling to enable the petitioner to supplement the request with the necessary additional facts, if they exist. Although the petitioner is not entitled to have counsel appointed in order to search the record for possible nonfrivolous claims, he should be provided with a meaningful opportunity to supplement the record and to renew his request for court-appointed counsel prior to the dismissal of his petition where, as here, he has alleged facts supporting some elements of a valid claim.

*Id*.

At issue in *Charboneau* was whether the district court erred in failing to rule on Charboneau's request for the appointment of post-conviction counsel prior to dismissing Charboneau's petition. *Charboneau*, 140 Idaho at 791, 102 P.3d at 1110. There, the Court cited to the language in *Brown* set forth above. *Charboneau*, 140 Idaho at 792-93, 102 P.3d at 1111-12. The Court then cited to its holding in *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 730, 69 P.3d 146, 150 (2003), and reiterated that, "it is clear that the standards imposed by I.C. § 19-852 are no longer applicable to the court's determination of entitlement to counsel in a post[-]conviction proceeding." *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112.

Despite recognizing that the standards of I.C. § 19-852, including the "possibility of a valid claim" standard, no longer controlled, the *Charboneau* Court nonetheless incorporated the *Brown* standard into its holding:

For the purposes of I.C. [§] 19-4904, the trial court should determine if the petitioner is able to afford counsel and whether this is a situation in which counsel should be appointed to assist the petitioner. In doing that analysis, the trial court should keep in mind the admonition set forth in *Brown* about the typical problems with *pro se* pleadings. Therefore, in giving notice of intent to deny the Petition, "the court should provide sufficient information regarding the basis for its ruling to enable the petitioner to supplement the request with the necessary additional facts, if they exist." [*Brown*, 135 Idaho at 679, 23 P.3d at 141.] If he alleges facts to raise the possibility of a valid claim, the district court should appoint counsel in

12

> order to give the petitioner an opportunity with counsel to properly allege the necessary supporting facts.

*Charboneau*, 140 Idaho at 793, 102 P.3d at 1112. Thus, the language "the possibility of a valid claim" relies directly upon the Court's interpretation of I.C. § 19-852 as articulated in *Brown*, but as the Court explicitly noted, I.C. § 19-852 was no longer relevant to an analysis of I.C. § 19-4904. Thus, the *Charboneau* Court's reliance on the "frivolous" standard, as articulated in *Brown*, was an incorrect statement of the law following the 2001 amendment to I.C. § 19-853.

*Swader* is equally unavailing because it cites the same standard. There, the Idaho Supreme Court held that Swader's case raised an issue similar to the issue raised in *Brown*. *Swader*, 143 Idaho at 654, 152 P.3d at 15. The standard articulated in *Swader* is:

> In deciding whether the *pro se* petition raises the possibility of a valid claim, the trial court should consider whether the facts alleged are such that a reasonable person with adequate means would be willing to retain counsel to conduct a further investigation into the claims. Although "the petitioner is not entitled to have counsel appointed in order to search the record for possible nonfrivolous claims," *Brown v. State*, 135 Idaho 676, 679, 23 P.3d 138, 141 (2001), the court should appoint counsel if the facts alleged raise the possibility of a valid claim.

*Swader*, 143 Idaho at 654, 152 P.3d at 15. The language "reasonable person of adequate means" is language from I.C. § 19-852(b)(3), which articulated the "frivolous" standard by which the appointment of counsel would be measured: "unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense and is therefore a frivolous proceeding." That standard was not incorporated as the applicable standard by which to appoint counsel in the 2001 amendment to I.C. § 19-853.

All cases following *Brown* that articulate the "frivolous" standard, including *Workman*, *Charboneau*, and *Swader*, rely on language from *Brown* that was dependent on the statutory interpretation of the versions of I.C. §§ 19-852 and 19-853 that were in effect in 2001. However, that analysis can no longer be supported once the legislature amended I.C. § 19-853 to make clear that the language from I.C. §§ 19-852 and 19-853 were no longer applicable in determining whether counsel should be appointed pursuant to I.C. § 19-4904. In fact, in the absence of I.C. § 19-852 and looking *only* at I.C. § 19-4904, even the *Brown* Court recognized the appointment of counsel in post-conviction proceedings was discretionary.

13

Thus, the analysis in *Workman*, *Charboneau*, and *Swader* all relied on a legally incorrect statement regarding the standard for the appointment of counsel in post-conviction proceedings pursuant to I.C. § 19-4904. Not only did those opinions cite to language that had been implicitly disavowed by legislative amendments to the relevant statutes, but they also imposed an additional standard that is not based on either I.C. § 19-4904 or *Brown*: "When considering a motion for appointment of counsel, the trial court must do more than determine whether the petition alleges a valid claim. The court must also consider whether circumstances prevent the petitioner from making a more thorough investigation into the facts." *Swader*, 143 Idaho at 654, 152 P.3d at 15. This standard is even one step beyond *Brown* and has been clearly rejected by the Idaho State Legislature because nothing in I.C. § 19-4904 requires the trial court to consider any circumstances in exercising its discretionary decision to appoint counsel.

Thus, the standard articulated in *Workman* for the appointment of counsel in post-conviction proceedings, when traced to its origins, does not support a conclusion that I.C. § 19-4904 *requires* the trial court to appoint counsel when the petitioner raises the possibility of a valid claim and prohibits the trial court from denying the appointment of counsel "only if all of the claims alleged in the petition are frivolous." In light of the unsupported premise, we cannot say the caselaw supports a conclusion that a trial court is required to appoint counsel where a petitioner alleges facts that support the possibility of a valid claim. There is no support in the caselaw that allows a petitioner to convert what is legislatively designated as a discretionary decision into a mandatory requirement by virtue of the claims in the petition. This is particularly true where a petitioner has no constitutional right to the appointment of counsel in post-conviction proceedings or to the effective assistance of counsel, even if appointed. *See Coleman v. Thompson*, 501 U.S. 722, 725 (1991) (holding that "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings"); *Murphy*, 156 Idaho at 395, 327 P.3d at 371 (holding that "where there is no right to counsel, there can be no deprivation of effective assistance of counsel" and thus Murphy failed to demonstrate "sufficient reason" for filing a successive petition based on ineffectiveness of post-conviction counsel).

### 4. Policy basis

In the absence of a constitutional, statutory, or precedential basis to mandate the appointment of counsel in certain post-conviction proceedings, a policy reason might justify such a standard. A brief historical review of the creation of the UPCPA, and the most likely reason

14

Idaho adopted such a process, may shed light on why the legislature and the courts read the protections afforded to post-conviction petitioners more narrowly than broadly and decline to legislate a mandatory standard for the appointment of counsel in a post-conviction proceeding.

The problems with the process by which a defendant collaterally challenges an alleged violation of federal constitutional protections in the underlying state criminal conviction are not new. Two distinct historical periods highlight increased tension between state and federal courts that provided the impetus to address the problems. The first period occurred during the Reconstruction era and the second occurred during Chief Justice Warren's tenure on the United States Supreme Court and its expansion of constitutional procedural and substantive due process protections in criminal cases.

The Reconstruction Congress enacted the Habeas Corpus Act of 1867, and the states ratified the Fourteenth Amendment in 1868. The measures, in addition to other federal statutes, gave the federal courts increased power to oversee state actions. The expanded authority allowed the federal courts to hear individualized claims and "empowered them to entertain systemic challenges to state action in federal court." Eve Brensike Primus, *A Structural Vision of Habeas Corpus*, 98 CAL. L. REV. 1, 13, (2010) [hereinafter Primus, *A Structural Vision*]. The reason for this broad authority was to address two problems: "isolated violations of individual rights" and perhaps more importantly, "rogue states refusing to enforce new federal rights systematically." *Id.* at 13-14. Nevertheless, the circumstances giving rise to the enactment of federal habeas remained largely unchanged for decades after Reconstruction. Some states continued to ignore the federal rights and created state processes that limited the applicability and availability of those rights. On review, states would argue the federal courts were precluded from reviewing state decisions made on state procedural grounds.

In 1949, the United States Supreme Court addressed the increasing tension between the state and federal courts in *Young v. Ragen*, 337 U.S. 235 (1949). In *Young*, the Court recognized that, generally, it would not review decisions of state courts that rested upon adequate state grounds under the exhaustion doctrine, but the application of the doctrine "presupposes that some adequate state remedy exists" by which state prisoners "may raise claims of denial of federal rights." *Id.* at 238-39. The Court then held that while it was within the states' authority to choose the procedure by which state defendants could vindicate federal rights, the state must provide "some clearly defined method by which [state prisoners] may raise claims of denial of federal rights" if the state

wanted to invoke the exhaustion bar to preclude federal review.  *Id*. at 239.  The same tension again reached a critical point during the *Warren* Court's expansion of constitutional procedural and substantive due process criminal rights, which in turn broadened the scope of federal habeas review of state criminal convictions.  Primus, *A Structural Vision*, *supra*, at 9-10; *see also* Joseph L. Hoffmann & William J. Stuntz, *Habeas After the Revolution*, 1993 SUP. CT. REV. 65, 67 (1993).

Some scholarship indicates federal habeas was designed to address structural issues, not individual case-by-case violations.  *See* Primus, *A Structural Vision*, *supra*, at 3-6; *see also* Joseph L. Hoffmann & Nancy J. King, *Right Problem; Wrong Solution*, 1 CAL. L. REV. CIR. 49, 50 (2010) ("Too many habeas scholars cling to the romantic vision of habeas as a curative for, or a deterrent of, individual case-specific errors in the enforcement of federal rights in state criminal cases.").  Other work argues federal habeas was designed to address individual, case-specific violations of constitutional rights.  *See* Bryan A. Stevenson, *Confronting Mass Imprisonment and Restoring Fairness to Collateral Review of Criminal Cases*, 41 HARV. C.R.-C.L. L. REV. 339, 360 (2006) ("Repeal or suspension of the [habeas restrictions contained in the] AEDPA [statute] is now required to improve the quality and reliability of criminal justice in the United States."); *see also* Amy E. Webbink, *Access Denied:  Incarcerated Juveniles and Their Right of Access to Courts*,  7 WM. & MARY BILL OF RTS. J. 613, 633 (1999) ("Perhaps more than any other single mechanism, prisoner litigation has contributed to prison reform, and even when a suit is lost, litigation opens the windows of prisons just a bit wider to make their historically dark interiors just a bit more visible to those on the outside." (citing JIM THOMAS, PRISONER LITIGATION:  THE PARADOX OF THE JAILHOUSE LAWYER, 96, 99 (1988)).

Regardless of what problem federal habeas corpus was designed to address--individual or systemic violations--the increased federal constitutional protections and the lack of state processes resulted in significantly more state prisoners filing federal habeas corpus petitions for state violations of federal constitutional rights.  Primus, *A Structural Vision*, *supra*, at 10-11.  The federal courts were unhappy with the increased caseload and the state courts were unhappy with the federal courts inserting themselves into state decision-making on a state issue.

These concerns led Congress and the courts to begin limiting the circumstances in which state claims could be reviewed in federal habeas corpus cases.  Eve Brensike Primus, *Litigating Federal Habeas Corpus Cases:  One Equitable Gateway at a Time*, AM. CONST. SOC'Y ISSUE BRIEF, 1, 4 (July 2018) [hereinafter Primus, *Litigating*] https://repository.law.umich.edu/cgi/view

16

content.cgi?article=1137&context=other (last accessed January 19, 2026). Enforcing the exhaustion requirement of 28 United States Code § 2254 was one mechanism to limit the number of federal habeas petitions eligible for review. Primus, *Litigating*, *supra*, at 4-5. However, the federal courts could not enforce the exhaustion doctrine in the absence of an adequate state process to raise claims that could not be brought on direct review. *Young*, 337 U.S. at 238-39. Many states, including Idaho, did not have clearly defined post-judgment procedures that would allow state criminal defendants to collaterally challenge alleged violations of federal constitutional rights in state court. Nat'l Conf. of Comm'rs on Unif. State Laws, *supra*, at 267.

In 1955, in response to increasing pressure from the federal courts, the National Conference of Commissions On Uniform State Laws (NCCUSL) recommended the adoption of a uniform act by which defendants could challenge the federal constitutionality of their underlying state criminal convictions in state court, thereby limiting federal review. *Id*. This Act was the Model Uniform Post-Conviction Petition Act (Model UPCPA). During the 1966 revision of the Model UPCPA, the NCCUSL recognized the difficulty states faced balancing the pressure to create a state collateral review process against abuse of the process concerns. On one hand, the NCCUSL recognized that "if a person has been unconstitutionally imprisoned while the numerous state remedies are pursued for from two to ten years, the situation is abhorrent to our sense of justice." Nat'l Conf. of Comm'rs on Unif. State Laws, *supra*, at 267. But the NCCUSL also recognized "if the greatest number of applications for post-conviction relief are groundless, the wear and tear on the judicial machinery resulting from years of litigation in thousands of cases becomes a matter of serious import to courts and judges. The element of expense is not to be ignored." *Id*. Thus, from the beginning of the Model UPCPA, there was a concern about the danger of frivolous claims overwhelming the courts.

Idaho adopted the Model UPCPA in 1967. The Idaho UPCPA was designed to replace habeas corpus as the mechanism to collaterally challenge posttrial claims of violations of federal constitutional rights. *See Dionne v. State*, 93 Idaho 235, 237, 459 P.2d 1017, 1019 (1969):

> The Uniform Post Conviction Procedure Act was passed by the 39th Session of the Idaho Legislature and became law in 1967. The purpose of the Act is set forth in Section I. It does not specifically repeal the use of the Writ of Habeas Corpus but states that it takes the place of all common law, statutory or other remedies previously available. It therefore is broader in scope than a Writ of Habeas Corpus.

17

The Idaho UPCPA also provided an opportunity for a petitioner to challenge the constitutionality of the proceedings that led to the judgment against him. Additionally, the Idaho UPCPA allowed a petitioner to challenge his sentence because the sentence had expired; that his probation, parole, or conditional release was unlawfully revoked; or that he was unlawfully held in custody or other restraint. I.C. § 19-4901(5).

In light of this historical backdrop, the philosophy underpinning a state's reason for adopting the Model UPCPA provides insight into the scope of protections afforded to a UPCPA petitioner. Precedent suggests that ensuring constitutional compliance was not the motivation for adopting the UPCPA. Instead, the motivation for Idaho, as with other states, was to create sufficient process in state courts that would limit federal habeas review of state court decisions. Because Idaho has a broad, direct-review scope, most allegations of federal constitutional violations other than ineffective assistance of counsel can be, and usually are, raised in direct review cases.

The Idaho Supreme Court has identified finality of state court judgments as one of its highest priorities and said as much in *Johnson v. State*, 162 Idaho 213, 395 P.3d 1246 (2017). There, Johnson asked the Court to overrule its earlier holding in *Murphy*, based on the exception articulated in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Johnson*, 162 Idaho at 227, 395 P.3d at 1260. In *Murphy*, the Court held that claims of "ineffective assistance of post-conviction counsel is not a sufficient reason under I.C. § 19-4908 for allowing a successive petition." *Murphy*, 156 Idaho at 396, 327 P.3d at 372. The exception in *Martinez* was a very narrow exception:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17.

The *Johnson* Court declined the invitation to revisit the issue, stating:

> However, while *Martinez* made it obligatory for federal habeas courts to hear claims of ineffective assistance of trial counsel if initial post-conviction counsel was not provided or failed to properly raise those issues, *Martinez* is explicitly equitable in nature. Because the holding in *Martinez* is not a constitutional holding it is not binding on state courts. Accordingly, we are not obligated to follow *Martinez* in our state courts. And we choose not to. The underlying policy in *Murphy* has not changed in the two years since it was decided, and we decline to apply *Martinez* in our state courts. *Murphy* remains good law.

18

> *Martinez* simply means such claims will not be procedurally defaulted in federal habeas proceedings and the federal court will have to address those claims on the merits.

*Johnson*, 162 Idaho at 228, 395 P.3d at 1261 (internal citations omitted). The underlying policy articulated in *Murphy* was a recognition that finality mattered:

> While it may be regrettable, we cannot guarantee every defendant effective counsel for every claim that may be raised. Defendants have made a sham out of the system of justice and thwarted imposition of their ultimate penalty with continuous petitions for relief that often present claims without a legal foundation. As one court stated, [w]e have created a web of procedures so involved that they threaten to engulf the penalty itself.

*Murphy*, 156 Idaho at 395, 327 P.3d at 371 (quoting *Bejarano v. Warden*, 929 P.2d 922, 925 (Nev. 1996) (internal quotation marks and citation omitted)). This prioritization of finality explains why I.C. § 19-4901 is read narrowly, rather than expansively.

Ultimately, the judicially created standard for the mandatory appointment of counsel in certain post-conviction proceedings does not solve the problem it was designed to address. The standard was created to address inadequacies in pro se petitions. *Brown*, 135 Idaho at 679, 23 P.3d at 141. But, if a petitioner is so unsophisticated that he is unable to articulate the possibility of a valid claim, whether to appoint counsel is within the trial court's discretion. If, however, the petitioner is lucky enough or sophisticated enough to allege a possibility of a valid claim, then the appointment of counsel is mandatory. Thus, the less-sophisticated petitioner who may need more legal protection, gets less. There is no principled basis to justify this disparate outcome given the policy articulated in *Brown*.

Given the above, this Court finds no constitutional, statutory, precedential, or policy basis to require the appointment of counsel where the petitioner alleges the possibility of a valid claim, and we disavow our prior opinions that hold otherwise. We recognize that while we may disavow our prior holdings that are inconsistent with this opinion, we are not free to disregard the Supreme Court's opinions on this issue and we do not do so in this case. Whether the district court erred in declining to appoint counsel using the "possibility of a valid claim" standard is addressed in subsection D of this opinion.

**B.      Abuse of Discretion Standard**

Tucker argues that even under the abuse of discretion standard, the possibility of a meritorious claim is one factor the trial court should consider when deciding whether to appoint counsel. Even if the potential merit of a claim is a factor that the court, in its discretion, may

19

review, there is no analytical framework to assess whether a trial court has abused its discretion. The abuse of discretion standard is well-established: When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). However, the application of this standard, in the context of post-conviction, is much less defined. At issue here are the second and third factors. As to the second factor, the discretion to appoint counsel is a binary choice: appoint or not appoint. By doing either, the trial court does not act outside the bounds of its discretion. As to the third factor, the legal standard applicable to the trial court is, fundamentally, that there is no right to counsel. If the trial court fails to appoint counsel, there is no foundational underpinning (or reasoned precedential basis) with which the trial court acted inconsistently.

Most abuse of discretion standards protect an underlying constitutional or statutory right. For example, the rules of evidence are designed to protect a criminal defendant's due process and equal protection rights. The admission of evidence is generally discretionary with the trial court unless "the error results in the defendant being deprived [of] his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal." *Dunlap*, 155 Idaho at 370, 313 P.3d at 26 (quoting *State v. Jones*, 154 Idaho 412, 417, 299 P.3d 219, 224 (2013)); *see also* Dakota Kann, *Admissibility of First Time in-Court Eyewitness Identifications: An Argument for Additional Due Process Protections in New York*, 39 CARDOZO L. REV. 1457, 1495 (2018) (noting that the entity authorized to prescribe new and later existing rules of evidence or methods of proof is limited only by the constitutional guaranties of due process of law and equal protection of the law).

Decisions regarding various trial court procedures--setting trial dates and granting continuances--are also discretionary but are similarly constrained by constitutional underpinnings. *See State v. Daly*, 161 Idaho 925, 929, 393 P.3d 585, 589 (2017) (noting that in Idaho, the motion for continuance is addressed to the sound discretion of the trial court, and the action of the trial court will be upheld unless there has been a clear abuse of discretion); *State v. Tomlinson*, 159 Idaho 112, 118, 357 P.3d 238, 244 (Ct. App. 2015) (holding the magistrate court's denial of Tomlinson's motion for a continuance did not violate his due process rights), *abrogated on other grounds by State v. Austin*, 163 Idaho 378, 413 P.3d 778 (2018); *State v. Spradlin*, 119 Idaho 1030,

1034, 812 P.2d 744, 748 (Ct. App. 1991) (reasoning the Court would only examine whether the trial court's refusal to continue Spradlin's trial abridged his right to due process).

While sentencing decisions are also discretionary in Idaho, that discretion is limited by the Eighth and Fourteenth Amendments. *See also North Carolina v. Pearce*, 395 U.S. 711 (1969) (noting: "To say that there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial is not, however, to end the inquiry. There remains for consideration the impact of the Due Process Clause of the Fourteenth Amendment."), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *State v. Campbell*, 170 Idaho 232, 251, 509 P.3d 1161, 1180 (2022) (holding the sentence imposed does not violate the Eighth Amendment because the district court properly considered Campbell's youth in reaching its sentencing decision).

In Idaho, post-conviction petitioners have fewer due process rights than criminal defendants. *Finley*, 481 U.S. at 555 (holding there is no Sixth Amendment right to counsel in collateral attack on conviction); *State v. Hall*, 163 Idaho 744, 830, 419 P.3d 1042, 1128 (2018) (holding capital defendant's constitutional due process rights did not require evidentiary hearing and no due process rights were violated by summary dismissal of his post-conviction petition); *Aeschliman*, 132 Idaho at 402, 973 P.2d at 754 (holding procedural due process was not violated by limitation of discovery in post-conviction proceeding). But even if we were to acknowledge post-conviction petitioners retain some due process rights, the United States Supreme Court and the Idaho Supreme Court have made clear that those rights are not protected by counsel's involvement in the post-conviction proceeding because there is no right to counsel or, if appointed, effective assistance of that counsel.

Even if there are discretionary decisions for a trial court that are not based upon a constitutional provision, in some instances, the Idaho State Legislature has constrained a trial court's discretionary conduct by statute. For example, in sentencing, the district court's sentencing discretion is limited by I.C. § 19-2521, which requires the district court to "first consider placement in the community." I.C. 19-2521(1)(a). The statute then lists factors which should be accorded weight in favor of avoiding a sentence of imprisonment (I.C. § 19-2521(2)) and those factors which should be accorded weight in favor of a sentence of imprisonment (I.C. § 19-2521(3)). The types of sentences a court "may" impose are described in I.C. § 19-2601. Similarly, whether to impose restitution is a discretionary determination by the trial court, but the legislature has again constrained the court's exercise of that discretion by listing factors the trial court "shall consider"

21

when determining whether to order restitution. I.C. § 19-5304(7). Even in the appointment of counsel in criminal proceedings, the defendant must be found to be indigent and I.C. § 19-6011 sets forth the factors for the trial court to consider in determining indigency.

In contrast, I.C. § 19-4906 provides no factors for the trial court to consider when deciding to appoint, or not appoint, counsel in post-conviction proceedings. Thus, there appears to be no constraint, either constitutionally or statutorily, on a trial court's decision to appoint, or not appoint, counsel. As such, there can be no abuse of discretion for failing to appoint counsel in *any* post-conviction proceeding, regardless of the merits of the petition.

Moreover, the denial of the appointment of counsel can hardly be considered prejudicial when there is no right to effective assistance of that counsel, even if appointed. *See Coleman*, 501 U.S. at 725 (holding that "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings"); *Murphy*, 156 Idaho at 395, 327 P.3d at 371 (holding that "where there is no right to counsel, there can be no deprivation of effective assistance of counsel" and thus Murphy failed to demonstrate "sufficient reason" for filing a successive petition based on ineffectiveness of post-conviction counsel). This is unlike the case where a petitioner alleges his counsel was ineffective for failing to file a notice of appeal. In that context, the United States Supreme Court has held that the adversary process itself is presumptively unreliable because the defendant has been denied counsel during a critical stage of the criminal proceeding or has forfeited an appellate proceeding altogether. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Neither of those circumstances are at issue in a post-conviction proceeding, which is not a critical stage of the criminal proceeding, and the petitioner is not deprived of the opportunity to participate in the proceeding, he just does so without counsel.

Thus, without an analytical framework by which to assess whether the district court abused its discretion in declining to appoint counsel, we cannot conclude the district court abused its discretion in declining to appoint counsel in this case regardless of the possibility of a valid claim.

## C.    Preservation

Even if this Court were to address the merits of Tucker's claim, we must address the State's argument that Tucker's claim is not preserved. Tucker's claim in the district court was that the *State* breached the plea agreement. The State then filed several responsive pleadings. Pursuant to I.R.C.P. 15(a), a "petitioner cannot amend his petition once a responsive pleading has been filed without permission of the court or written permission of the State." *Schultz v. State*, 151 Idaho

22

383, 387, 256 P.3d 791, 795 (Ct. App. 2011). No such permission was granted by the State or the district court. Moreover, a response to a notice of intent to dismiss is not a mechanism to advance new claims, instead, the purpose of the twenty-day notice requirement is to provide the petitioner an opportunity to establish a material fact issue related to the claims alleged in the petition. *McKinney v. State*, 162 Idaho 286, 293, 396 P.3d 1168, 1175 (2017). Not only did Tucker not ask to amend his petition, he also never argued his affidavit should be treated as an amended petition. As a result, Tucker's new claim raised in his affidavit--that the trial court did not follow the plea agreement--was not properly before the district court and the district court did not err in dismissing this claim. *See Cole v. State*, 135 Idaho 107, 111, 15 P.3d 820, 824 (2000) (holding: "Because Cole did not properly request and receive leave to amend his post-conviction relief petition, the amended petition was not properly before the district judge; therefore, the district judge did not err in dismissing Cole's petition."); *see also Schultz*, 151 Idaho at 387, 256 P.3d at 795 (holding district court did not err in dismissing Schultz's petition for post-conviction relief because the claim was not raised in the initial petition but only in an amended petition for which Schultz did not obtain permission to file).

Another reason Tucker's claim was not properly before the district court is one proffered by the State in its answer: a claim that the prosecutor breached the plea agreement is a claim that could have or should have been raised on direct appeal and thus, is forfeited pursuant to I.C. § 19-4901(b). That analysis does not change simply because Tucker later alleged it was the trial court that did not follow the plea agreement. Consequently, Tucker has forfeited this claim because he has failed to allege sufficient facts to show why it could not have been raised in his direct appeal.

Regardless of whether the district court correctly dismissed Tucker's claim on the merits, the district court could have dismissed the claim on the ground that it was not properly before the district court or because it was forfeited. In either instance, Tucker's claim is frivolous and does not warrant the appointment of counsel. Thus, we can affirm the dismissal on this alternate ground. *See Abbott v. State*, 129 Idaho 381, 385, 924 P.2d 1225, 1229 (Ct. App. 1996) (holding if an order of the trial court is based on an erroneous legal theory, but is supported by a correct alternative legal theory, we will nonetheless uphold the trial court's decision).

In this case, the district court notified Tucker that his petition contained clearly frivolous claims and, as such, denied his request for counsel. However, the district court provided Tucker the opportunity to address the deficiencies in his petition by providing additional facts that would

23

give rise to the possibility of a valid claim. Tucker failed to provide any additional facts and thus, did not establish the possibility of a valid claim. Because Tucker's only claim was not properly before the district court, had been forfeited, or was not supported by admissible evidence, it was not error for the district court to deny Tucker's request for counsel and give Tucker notice that it would summarily dismiss the petition in the absence of additional factual support.

**D.      Merits Review**

Finally, even if Tucker's claim is reviewed on the merits, it still fails. Tucker argues he alleged a genuine issue of material fact that precluded the summary dismissal of his petition. The State argues that because the claim was frivolous, the district court did not err in summarily dismissing Tucker's petition for post-conviction relief.

Tucker's claim in his petition--that the prosecutor breached the plea agreement--was rejected by the district court because a review of the relevant documents from the underlying criminal case demonstrates that although the prosecutor did not explicitly say the charges were to run concurrently, the trial court had "reviewed the plea agreement prior to sentencing and understood the State's sentencing argument to have the imposed time to run concurrently to his other charges." That finding is supported by the transcript in the underlying criminal case. Moreover, Tucker does not assert the district court erred in finding this claim was belied by the record, and thus, Tucker has waived any challenge to the district court's ruling on appeal.

As for Tucker's subsequent claim that the trial court did not follow the plea agreement, the district court found this claim equally meritless because the trial court was not bound by the plea agreement and "had the discretion to impose concurrent or consecutive sentences." Because the trial court acted within its discretion in ordering the new charges to run consecutively to the probation violation charges, the district court concluded the trial court followed the plea agreement as written.

The district court found Tucker's allegations to be frivolous, explicitly finding the claim did not justify the appointment of counsel. The district court then found Tucker failed to proffer any evidence in support of his claim, the claim was supported only by conclusory allegations, and the claim was disproven by the record in the underlying criminal proceeding. When read in context, the district court found Tucker's allegations frivolous, which justified both the denial of the appointment of counsel and the summary dismissal of Tucker's petition. Thus, Tucker fails to

establish either that the district court used an incorrect standard when denying his motion for the appointment of counsel, or in summarily dismissing his petition.

## IV.

## CONCLUSION

The district court did not abuse its discretion in declining to appoint post-conviction counsel to Tucker. The district court similarly did not err in summarily dismissing Tucker's petition for post-conviction relief. The judgment dismissing Tucker's petition is affirmed.

Chief Judge TRIBE and Judge LORELLO, **CONCUR**.